## TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................2

II.    LEGAL STANDARD ..............................................................................5

III.    ARGUMENT............................................................................................5

   A.    The United States lacks standing ...........................................5

   B.    The United States lacks an equitable cause of action ........................13

   C.    The Court should abstain from deciding this case under the
         *Younger* abstention doctrine...............................................18

IV.    CONCLUSION.........................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alfred L. Snapp & Son v. Puerto Rico*,
    458 U.S. 592 (1982)................................................................13

*Allee v. Medrano*,
    416 U.S. 802 (1974)................................................................23

*AmerisourceBergen Corp. v. Roden*,
    495 F.3d 1143 (9th Cir. 2007) ................................................19

*Applied Underwriters, Inc. v. Lara*,
    37 F.4th 579 (9th Cir. 2022) ..................................................18

*Arevalo v. Hennessy*,
    882 F.3d 763 (9th Cir. 2018) ..................................................19

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)................................................................14

*Ass'n of Am. Med. Colls. v. United States*,
    217 F.3d 770 (9th Cir. 2000) ..................................................10

*Bates v. Dow Agrosciences*,
    544 U.S. 431 (2005)..................................................................8

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022) ................................................9

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)................................................................15

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) ................................................10

*Bristol-Myers Squibb Co. v. Connors*,
    979 F.3d 732 (9th Cir. 2020) ..................................................20

*California v Texas*,
    593 U.S. 659 (2021)................................................................12

*Citizens for Free Speech, LLC v. Cty. of Alameda*,
  953 F.3d 655 (9th Cir. 2020) ................................................................20

*City & Cty. of Honolulu v. Sunoco LP*,
  537 P.3d 1173 (Haw. 2023) ....................................................... 4, 21, 22

*City of Reno v. Netflix, Inc.*,
  52 F.4th 874 (9th Cir. 2022) ...............................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................... 11, 12

*Clinton v. Goldsmith*,
  526 U.S. 529 (1999) ..............................................................................13

*Cofield v. United States*,
  64 F. Supp. 3d 206 (D.D.C. 2014) .......................................................14

*Credit One Bank, N.A. v. Hestrin*,
  60 F.4th 1220 (9th Cir. 2023) .............................................................20

*Denver & R.G.R. Co. v. United States*,
  241 F. 614 (8th Cir. 1917) ...................................................................13

*Diggs v. Wolcott*,
  8 U.S. (4 Cranch) 179 (1807) ..............................................................15

*Donovan v. City of Dallas*,
  377 U.S. 408 (1964) ..............................................................................15

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ..............................................................................21

*Ex parte Young*,
  209 U.S. 123 (1908) ....................................................................... 17, 18

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ..............................................................................12

*Fenner v. Boykin*,
  271 U.S. 240 (1926) ..............................................................................16

*Friends of E. Hampton Airport, Inc. v. Town of East Hampton*,
  841 F.3d 133 (2d Cir. 2016) ...............................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)..............................................................................5

*Gilbertson v. Albright*,
  381 F.3d 965 (9th Cir. 2004) ....................................................... 19, 22

*Green v. City of Tucson*,
  255 F.3d 1086 (9th Cir. 2001) ...........................................................23

*Gregg v. Haw. Dep't of Pub. Safety*,
  870 F.3d 883 (9th Cir. 2017) ...............................................................5

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)................................................................ 1, 14, 17

*Henson v. Ciba-Geiby Corp.*,
  261 F.3d 1065 (11th Cir. 2001) .........................................................13

*Herrera v. City of Palmdale*,
  918 F.3d 1037 (9th Cir. 2019) ...........................................................23

*Hicks v. Miranda*,
  422 U.S. 332 (1975)............................................................................23

*In re Debs*,
  158 U.S. 564 (1895)............................................................................18

*Key v. Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025) ..........................................................15

*Lake v. Fontes*,
  83 F.4th 1199 (9th Cir. 2023) ..................................................... 6, 8, 9

*Leiter Minerals, Inc. v. United States*,
  352 U.S. 220 (1957)............................................................................25

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................8, 11

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ..................................................................9

*McKesson v. Doe*,
  592 U.S. 1 (2020)...............................................................................13

*Mecinas v. Hobbs*,
  30 F.4th 890 (9th Cir. 2022) ................................................................11

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ...............................................................17

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ......................................................... 11, 12

*Moore v. Sims*,
  442 U.S. 415 (1979)...................................................................... 15, 18

*Morning Hill Foods, LLC v. Hoshijo*,
  259 F. Supp. 3d 1113 (D. Haw. 2017)..................................................21

*N Grp. LLC v. Haw. Cty. Liquor Comm'n*,
  681 F. Supp. 2d 1209 (D. Haw. 2009)...................................................22

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987)................................................................................21

*Pierce v. Ducey*,
  965 F.3d 1085 (9th Cir. 2020) ...............................................................7

*Potrero Hills Landfill, Inc. v. Cty. of Solano*,
  657 F.3d 876 (9th Cir. 2011) ...............................................................21

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) ..............................................................10

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
  754 F.3d 754 (9th Cir. 2014) ...............................................................19

*Rhode Island v. Shell Oil Products Co.*,
  35 F.4th 44 (1st Cir. 2022).....................................................................9

*Roshan v. McCauley*,
130 F.4th 780 (9th Cir. 2025) ................................................................19

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
279 F.3d 817 (9th Cir. 2002) ................................................................10

*SEC v. Wencke*,
622 F.2d 1363 (9th Cir. 1980) ...............................................................25

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013).................................................................................20

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)...............................................................................8

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,
256 F.3d 879 (9th Cir. 2001) ......................................................... 12, 13

*Texas v. United States*,
523 U.S. 296 (1998)...............................................................................10

*Trainor v. Hernandez*,
431 U.S. 434 (1977)......................................................................... 15, 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................6, 18

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025)........................................................................1, 14

*Trump v. New York*,
592 U.S. 125 (2020)...............................................................................10

*United States v. California*,
639 F. Supp. 199 (E.D. Cal. 1986) ........................................................24

*United States v. California*,
655 F.2d 914 (9th Cir. 1980) .................................................................13

*United States v. Composite State Bd. of Med. Examiners*,
656 F.2d 131 (5th Cir. Unit B Sept. 1981) ..................................... 24, 25

*United States v. Morros*,
   268 F.3d 695 (9th Cir. 2001) ................................................. 23, 24, 25

*United States v. Oregon*,
   No. 10-528-HA, 2011 WL 11426 (D. Or. Jan. 4, 2011).......................................24

*United States v. Rural Elec. Convenience Coop. Co.*,
   922 F.2d 429 (7th Cir. 1991) ................................................................16

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)........................................................................6, 11

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021)..........................................................................17

*Yelp Inc. v. Paxton*,
   137 F.4th 944 (9th Cir. 2025) ..............................................................19

*Younger v. Harris*,
   401 U.S. 37 (1971).................................................................... passim

**Statutes**

28 U.S.C. § 1651........................................................................13

28 U.S.C. § 2201........................................................................13

28 U.S.C. § 2202........................................................................13

HRS § 480-2..........................................................................4, 20

HRS § 480-3.1.............................................................................5

HRS § 480-13..............................................................................5

HRS § 480-14..............................................................................5

**Rules**

Fed. R. Civ. P. 12.........................................................................5

**Other Authorities**

1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* § 330
   (1905)...................................................................................14

Aditya Bamzai & Samuel L. Bray, Debs *and the Federal Equity Jurisdiction*, 98 Notre Dame L. Rev. 699 (2022) ..................................................15

Big Oil Accountability Lawsuits, Ctr. for Climate Integrity, https://climateintegrity.org/lawsuits ........................................................9

James E. Pfander & Jacob P. Wentzel, *The Common Law Origins of* Ex parte Young, 72 Stan. L. Rev. 1269 (2020) ....................................................18

John Harrison, *Ex Parte* Young, 60 Stan. L. Rev. 989 (2008) ...............................17

Protecting American Energy From State Overreach, Exec. Order No. 14,260, 90 Fed. Reg. 15,513 (Apr. 14, 2025)...........................2

## MEMORANDUM IN SUPPORT OF MOTION

Shortly after learning that the State of Hawaiʻi was preparing to file a lawsuit against fossil fuel companies, the United States filed this extraordinary and unprecedented action, which attempts to prevent the State from petitioning its own courts to provide it with relief from private parties whose past actions violated state law and harmed the State. The Government asks this Court to enjoin the State from continuing to prosecute an ongoing state proceeding to which the United States is not a party, and in which it has no interest.

Fundamental restraints on the power of federal courts preclude this case from going any further. First, the United States lacks standing. Its alleged injuries—to the national market for fossil fuels and the Americans who participate in it—are the furthest thing imaginable from direct, certain, or imminent. Second, the United States lacks a cause of action. "[E]quitable authority is not freewheeling[,]" but limited to "those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025) (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). The United States seeks relief that contravenes traditional equity principles and has no historical analogue. Third, the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention prevents federal

1

courts from enjoining governmental civil enforcement actions in state courts, which is precisely what the United States is asking the Court to do here.

Allowing this case to proceed would give the United States license to wield the federal courts as a weapon against any litigation between nonfederal parties that an incumbent presidential administration dislikes. Defendants—the State, its Governor, and its Attorney General—request that the Court dismiss this action.

## I.    BACKGROUND

On April 8, President Trump declared that many states' efforts relating to climate change are "fundamentally irreconcilable" with his administration's policy of encouraging further fossil fuel development and "should not stand."[1] He ordered the U.S. Attorney General to review the legality of "all State and local laws, regulations, causes of action, policies, and practices . . . burdening the identification, development, siting, production, or use of domestic energy resources[,]" and to "expeditiously take all appropriate action to stop" those she deemed illegal.[2] This sweeping federal directive was supposedly motivated in part by concerns for "Federalism" and "the equality of each State enshrined by the Constitution[.]"[3]

---

[1]    Protecting American Energy From State Overreach, Exec. Order No. 14,260, 90 Fed. Reg. 15,513 § 1 (Apr. 14, 2025).

[2]    *Id.* § 2(a), (b).

[3]    *Id.* § 1.

On Monday, April 28, Governor Green said during an interview that Hawaiʻi would be filing suit against fossil fuel companies that Thursday, May 1. Compl., ECF No. 1, ¶ 4. That was apparently enough for the Government. The day before the State filed its lawsuit, and with no knowledge of which fossil fuel companies would be sued, what facts would be alleged, or what theories of liability would be pled, *see id.* ¶ 14, the United States filed this lawsuit against the State (the "Federal Action"). The United States predicted that the State would "seek[] to hold fossil fuel companies liable" under a "strict liability" theory for their "lawful conduct" that "contribut[ed] to greenhouse gas emissions" and "caus[ed] climate change impacts to Hawaii." *Id.* ¶¶ 14, 38, 51. Extrapolating further, it alleged that the State's anticipated claims would be preempted by federal law, including the Clean Air Act (CAA), and violate the U.S. Constitution. *Id.* ¶¶ 28–88. The United States asks this Court to "[d]eclare Hawaii's state law claims unconstitutional" and to "[p]ermanently enjoin Defendants from taking actions to assert Hawaii's state law claims[.]" *Id.* at 31. However, the United States did not seek preliminary injunctive relief to forestall the State from commencing its own case.

On May 1, the State, acting by and through Attorney General Lopez, filed its climate-deception suit (the "State Action") against eighteen of "the largest oil and gas companies in the world and a national oil and gas industry trade association"

(the "State Action Defendants"). State Action Compl. ¶¶ 28, 33.[4] Contrary to the United States' expectations, the State Action "does *not* seek to impose liability on [the State Action] Defendants for their direct emissions of [greenhouse gases.]" *Id.* ¶ 20. Instead, it "seeks relief for injuries in Hawaiʻi caused by [the State Action] Defendants' tortious, deceptive, and unlawful conduct within and outside of Hawaiʻi[.]" *Id.* ¶ 21. As the Hawaiʻi Supreme Court explained in a similar climate-deception suit, such actions seek to impose liability for deception and failure to warn, and "do[] not seek to regulate emissions or curb energy production[.]" *City & Cty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1193 (Haw. 2023), *cert. denied*, 145 S. Ct. 1111 (2025).

Specifically, the State Action complaint alleges that the State Action Defendants "conceal[ed] the dangers of . . . and promot[ed] false and misleading information about fossil fuel products[.]" State Action Compl. ¶ 10. It pleads claims of state law negligence, public nuisance, private nuisance, trespass, harm to public trust resources, civil aiding and abetting, and strict liability for failure to warn, and alleges violations of Hawaii Revised Statutes (HRS) § 480-2, the Hawaiʻi Unfair or Deceptive Acts or Practices statute. *Id.* ¶¶ 327–448. It seeks compensatory, punitive, and natural resource damages, disgorgement of profits, equitable relief (including

---

[4]    The State Action is *State ex rel. Lopez v. BP P.L.C.*, No. 1CCV-25-0000717. The State requests that the Court take judicial notice of the State Action complaint, a copy of which is attached as **Appendix A**.

"abatement in Hawaiʻi of the nuisances complained of"), and statutory penalties and damages under HRS §§ 480-3.1, 480-13, and 480-14. *Id.* at 193–94.

## II.    LEGAL STANDARD

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (cleaned up). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (cleaned up).

## III.    ARGUMENT

### A.    The United States lacks standing.

To establish standing, the United States must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The United States bears the burden of setting forth facts "sufficient to satisfy these Art[icle] III standing requirements[,]" and "[a] federal court is powerless to create

its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).

The United States fails to establish Article III standing. Its allegations of future harm are far too abstract and inchoate to meet the concreteness requirement, and its alleged injuries are conjectural and hypothetical, not actual or imminent. Its theory of standing is based on potential downstream effects of the State Action that are too speculative and remote to establish a cognizable injury. And the United States does not establish traceability or redressability because its alleged injuries depend on multiple layers of contingencies, including the unpredictable decisions of third parties.

1. A "concrete injury must be real . . . . [A]n abstract, theoretical concern will not do." *Lake v. Fontes*, 83 F.4th 1199, 1203 (9th Cir. 2023) (cleaned up). While "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," the risk of future harm must still be "sufficiently imminent and substantial" to satisfy the concrete harm requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

The United States speculates that a judgment against the State Action Defendants might end up "second-guess[ing] EPA's regulatory choices," Compl. ¶ 38, "increasing energy costs and disrupting the national energy market," *id.* ¶ 39, "increas[ing] the United States' costs for purchasing fuels and threaten[ing] revenue

6

from federal leasing[,]" *id.* ¶ 44, "imposing penalties or fines" that "burden" interstate and foreign commerce, *id.* ¶¶ 62, 70, and "undermin[ing] the United States' ability to speak with one voice in international relations[,]" *id.* ¶ 86. But the United States cannot allege a concrete injury by pointing to speculative, hypothetical harms that might result from a potential judgment in the State Action that, if it even occurs, may be years away. The United States' alleged injuries are not only contingent on the (presently uncertain) outcome of the State Action, but also on the legal basis and substantive contents of any such decision, which would affect whether the judgment in fact collides with EPA's regulatory choices, affects energy markets, disrupts federal leasing programs, or burdens commerce.

The United States also seems to hinge those injuries on a state court judgment involving "large sums of money[,]" *id.* at ¶ 14, although it does not allege what dollar amount would need to be at issue to "raise energy costs for consumers nationwide[,]" *id.* ¶ 7. And tellingly, the United States does not identify any lessee that would avoid entering any oil or gas lease, any foreign nation that would alter its relations with the United States, or any EPA regulation that would be undermined if the State prevails in the State Action. These omissions underscore that the United States' injuries are entirely "abstract, theoretical concern[s,]" which do not satisfy the concrete harm requirement. *Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020).

2.  The United States also fails to allege actual or imminent harm. "Where there is no actual harm , . . . its imminence (though not its precise extent) must be established." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992). A future injury may suffice if it is "certainly impending" or there is "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). "[C]onjectural allegations of potential injuries are insufficient to plead a plausible real and immediate threat." *Lake*, 83 F.4th at 1204.

The United States' allegations of harm fail the imminence inquiry because they depend on multiple layers of contingencies. Even if the State Action Defendants are someday subject to an adverse judgment, the United States cannot reasonably express confidence about how the State Action Defendants will respond, much less how the judgment might affect a national fossil fuel market that is responsive to a complex network of decisions made by governments, corporations, and individuals across the world. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005) (rejecting "speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants)"). The State Action Defendants may have already factored the cost of climate-deception lawsuits,

like the State's, into current energy prices and leasing practices.[5] Or they may pay for an adverse judgment by spending down existing capital reserves or reducing the dividends paid to shareholders without ever altering their leasing or pricing decisions.[6] Given that the price of fossil fuels is a function of global supply and demand, the State Action Defendants may lack the pricing power needed to pass any costs of an adverse judgment onto consumers. Even if the State Action Defendants reduce their leasing of federal land, other market participants might fill the gap. Various defendants may respond differently to a hypothetical adverse judgment. For all these reasons, the United States' complaint relies on "conjectural allegations of potential injuries" that stretch "the concept of imminence beyond its purpose." *Lake*, 83 F.4th at 1204 (cleaned up).

Equally speculative is the United States' allegation that the State Action either "would" or "could" "undermine the ability of the United States to speak with one

---

[5]     Thirty-six other climate-deception lawsuits had already been filed at the time Hawaiʻi filed the State Action. *See* Big Oil Accountability Lawsuits, Ctr. for Climate Integrity, https://climateintegrity.org/lawsuits.

[6]     Indeed, multiple courts of appeals have rejected attempts by fossil fuel companies to remove climate-deception suits like the State's to federal court based on speculation that judgments in such suits might impair federal leasing programs. In the Tenth Circuit's words, "it is difficult to see how such a prospective theory of negative economic incentives—flowing from a lawsuit that does not directly attack . . . exploration, resource development, or leases—is anything other than contingent and speculative." *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1275 (10th Cir. 2022); *accord Rhode Island v. Shell Oil Products Co.*, 35 F.4th 44, 60 (1st Cir. 2022) (same)*; Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 222 (4th Cir. 2022) (similar).

voice" on foreign affairs. Compl. ¶¶ 70, 84. Any alleged foreign-affairs injury is contingent not only on a hypothetical judgment against the State Action Defendants, but also on the manner in which liability is imposed, how those defendants and other industry actors respond, how the Executive Branch itself treats the decision in relation to foreign policy, and the unpredictable responses of foreign nations. Such allegations of "hypothetical, speculative or other 'possible future' injuries" do not satisfy the injury-in-fact requirement. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002).

3.    The injury-in-fact requirement also applies to, and "overlaps with[,]" Article III's constitutional ripeness requirement. *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025). "[A] claim is not [constitutionally] ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see Trump v. New York*, 592 U.S. 125, 131 (2020). That describes this case to a tee: the prognosticated effects of the State Action may not occur as the United States anticipates or indeed may not occur at all. The United States' suit rests on contingencies that courts are "ill-equipped to predict." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 782 (9th Cir. 2000).

4.  The second element of standing, traceability, requires a "causal connection between the injury and the conduct complained of[.]" *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560). Traceability is often absent where an injury is "contingent upon the decisions of many independent actors in the causal chain[.]" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 654 (9th Cir. 2017). Here, as discussed, any potential increase in the cost of energy is remote, speculative, and contingent upon the decisions of many independent actors in the causal chain. Similarly, any impact on leasing practices depends on both the outcome of the State Action and the State Action Defendants' and other market participants' reactions, none of which is predictable. The same is true of the United States' allegations that the State Action may conflict with "EPA's regulatory choices[,]" Compl. ¶ 38, "impos[e] penalties or fines" that "burden" interstate and foreign commerce, *id*. ¶¶ 62, 70, and "undermine the United States' ability to speak with one voice in international relations[,]" *id*. ¶ 86. Courts are ultimately "reluctant to endorse standing theories"—like the United States'—"that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013); *see also Whitmore*, 495 U.S. at 159–60 (finding alleged injury too attenuated because "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case").

The links in the causal chain between the State Action and the United States'
supposed injuries are too contingent upon the conduct of independent third parties
to establish Article III standing. *See California v Texas*, 593 U.S. 659, 678 (2021)
(injury not fairly traceable where the theory of standing rested on a "highly
attenuated chain of possibilities" (quoting *Clapper*, 568 U.S. at 410 (2013)); *see also
FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024) ("[T]he plaintiff must
show a predictable chain of events leading from the government action to the
asserted injury[.]"). For the same reasons, the United States has failed to plausibly
allege that its injuries will be redressed by a favorable decision. *See id*. at 380–81
("[C]ausation and redressability . . . are often flip sides of the same coin." (cleaned
up)).

5.   As an alternative, the United States claims that it has parens patriae
standing "to protect the economic well-being of its citizens and the national energy
market from Hawaii's attempts to impose extraterritorial and excessive burdens on
fossil fuel companies[.]" Compl. ¶ 7. Sovereigns asserting parens patriae standing
must meet the requirements of Article III, which the United States, for the reasons
articulated, has failed to do. *See Missouri*, 847 F.3d at 651; *see also Table Bluff
Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001).
The United States also has not "'allege[d] injury to a sufficiently substantial segment
of its population,' 'articulate[d] an interest apart from the interests of particular

private parties,' and 'express[ed] a quasi-sovereign interest[,]'" as additionally

required for parens patriae standing. *Wiyot Tribe,* 256 F.3d at 885 (quoting *Alfred L.*

*Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607 (1982)).

**B.    The United States lacks an equitable cause of action.**

This lawsuit also cannot proceed because the United States lacks a cause of

action. Traditionally, the State Action Defendants would assert their federal defenses

in Hawaii's state courts, which are fully equipped to apply federal law. *See*

*McKesson v. Doe*, 592 U.S. 1, 5 (2020) ("[F]ederal and state courts alike are

competent to apply federal and state law."). Here, the United States, which is not a

party to the State Action, instead takes the extraordinary step of bringing an

affirmative lawsuit that asserts the State Action Defendants' federal defenses against

the State. Yet the United States has no cause of action to do so.

Just "like any other plaintiff, the federal government must first have a cause

of action against the state." *United States v. California*, 655 F.2d 914, 918 (9th Cir.

1980). This can be a "statut[ory]" or "a common-law right of action[.]" *Denver &*

*R.G.R. Co. v. United States*, 241 F. 614, 616 (8th Cir. 1917). Here, the United States

identifies only the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment

Act, *id.* §§ 2201–02. *See* Compl. ¶ 6. Neither supplies a cause of action.[7]

---

[7]    *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (All Writs Act merely
authorizes a court to issue writs "in aid of" otherwise "existing statutory
jurisdiction"); *Henson v. Ciba-Geiby Corp.*, 261 F.3d 1065, 1070 (11th Cir. 2001)

Absent a statutory cause of action, the United States must show that it has an equitable cause of action under the common law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state . . . officers is the creation of courts of equity[.]").[8] Although "[e]quity is flexible, . . . its flexibility is confined within the broad boundaries of traditional equitable relief." *CASA*, 145 S. Ct. at 2554 (cleaned up). The key question is whether a claimant seeks equitable relief that is "sufficiently analogous to the relief issued by High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act." *Id.* at 2551 (cleaned up). Federal courts take a "traditionally cautious approach to equitable powers, which leaves any substantial expansion of past practice to Congress[.]" *Grupo Mexicano*, 527 U.S. at 329. Here, the United States cannot make the necessary showing because this lawsuit violates longstanding constraints on federal equity jurisdiction. *See* Aditya Bamzai & Samuel L. Bray, Debs *and the*

---

("[A] plaintiff cannot sue invoking only the court's All Writs power."); *Cofield v. United States*, 64 F. Supp. 3d 206, 212 (D.D.C. 2014) (Jackson, K.B., J.) ("The All Writs Act itself is not a grant of jurisdiction, and does not provide a basis for a cause of action." (cleaned up)); *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists.").

[8]    *Accord* 1 John Norton Pomeroy, Jr., *A Treatise on Equitable Remedies* § 330 (1905) ("When the state as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors; that is, it must establish . . . a right to the particular relief demanded.").

*Federal Equity Jurisdiction*, 98 Notre Dame L. Rev. 699, 709 (2022) (federal equity jurisdiction is constrained by "a series of doctrines [that] limit equitable powers—principles about what equity will not do").

First, federal courts sitting in equity will not interfere with pending state-court litigation. "Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) (footnote omitted). This rule is deeply rooted in federalism principles. "[I]n a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts." *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977). Thus, there is a "strong policy against federal intervention in state judicial processes[.]" *Moore v. Sims*, 442 U.S. 415, 423 (1979).[9]

Second, "equity has always acted only when legal remedies were inadequate[.]" *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959); *see Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (similar). The United States cannot satisfy this prerequisite because it cannot establish that it lacks an adequate

---

[9]    *Accord Diggs v. Wolcott*, 8 U.S. (4 Cranch) 179, 180 (1807) ("[A] circuit court of the United States had not jurisdiction to enjoin proceedings in a *state* court[.]").

remedy at law until it exhausts opportunities to intervene in the State Action. *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 433 & n.6 (7th Cir. 1991).[10] Also, existing legal remedies are adequate because the State Action Defendants can and will defend themselves in the State Action using the exact same federal-law theories the United States presses here.[11] *See Trainor*, 431 U.S. at 441 ("[T]he existence of an adequate remedy at law barring equitable relief" turns "on the remedies available in the pending state proceeding."). And there is nothing preventing the United States from offering assistance to the State Action Defendants in advancing such arguments, including by moving to file an *amicus* brief. Thus, there is no reason to believe that the proceedings in the State Action would not provide adequate legal protection for the United States' purported interests. *See Fenner v. Boykin*, 271 U.S. 240, 243 (1926) (ordinarily, formal legal action by state officers should not be enjoined unless it plainly appears that the defendant's ability to rely upon his defense in state court would not afford adequate protection). The United States' mere preference for a federal forum changes nothing. *See Grupo*

---

[10]    The State does not concede that such intervention would be proper, and preserves any objections to intervention in the State Action. But as the Seventh Circuit explained, the United States must attempt, and fail, to intervene in the State Action before it can possibly invoke federal equity jurisdiction.

[11]    The State Action Defendants have moved to stay the State Action, indicating that they agree with all the federal claims raised by the United States in this action. That motion is attached as **Appendix B**.

*Mexicano*, 527 U.S. at 321 (federal courts do not have "a general power to grant relief whenever legal remedies are not 'practical and efficient'").

Third, while it is true that "traditional equity practice . . . allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law," *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), this cause of action for a so-called "anti-suit injunction" usually allows only "*potential defendants* in legal actions to raise in equity a defense available at law." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (Sutton, J.) (emphasis added); *see* John Harrison, *Ex Parte* Young, 60 Stan. L. Rev. 989, 990 (2008) (only "a party who would be the defendant in a corresponding lawsuit" can sue).[12]

The United States, by contrast, is under no threat of enforcement by the State. The United States' complaint does not identify any case where the Supreme Court or the Ninth Circuit allowed a plaintiff so far removed from a state enforcement action to enjoin the proceeding. Indeed, the Supreme Court has declined to expand *Ex parte Young* to authorize injunctions that restrain lawsuits that are already pending in the state court, *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 594 (9th

---

[12]    *Accord Friends of E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 144 (2d Cir. 2016) (*Ex parte Young* plaintiff "generally invokes equity preemptively to assert a defense that would be available to *it* in a state or local enforcement action" (emphasis added)).

17

Cir. 2022), consistent with the "strong policy against federal intervention in state judicial processes[.]" *Moore*, 442 U.S. at 423.[13]

Because the United States' suit exceeds these fundamental constraints on federal equity jurisdiction, it cannot proceed.  If the United States could sue the State here, the United States would be able to drag into federal court any state-court lawsuit big enough to have ripple effects that might indirectly reach the United States—even suits like this one that are far removed from any federal program, function, or property. That cannot be, as "[f]ederal courts do not possess a roving commission to publicly opine on every legal question[,]" *TransUnion LLC*, 594 U.S. at 423, and "it is not the province of the government to interfere in any mere matter of private controversy between individuals, or to use its great powers to enforce the rights of one against another[,]" *In re Debs*, 158 U.S. 564, 586 (1895).

### C.    The Court should abstain from deciding this case under the *Younger* abstention doctrine.

Relatedly, the Court should abstain from adjudicating this case under *Younger* to "avoid a duplication of legal proceedings" and to demonstrate "a proper respect for state functions[.]" 401 U.S. at 44. "When an injunction is sought and *Younger*

---

[13]    *Accord* James E. Pfander & Jacob P. Wentzel, *The Common Law Origins of Ex parte Young*, 72 Stan. L. Rev. 1269, 1338 (2020) (*Ex parte Young* "was careful" to ensure "that no proceeding was pending in state court when the [federal plaintiff] sought its stay").

applies, . . . dismissal (and only dismissal) is appropriate." *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004).

"The *Younger* abstention doctrine . . . forbids federal courts from staying or enjoining pending state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147 (9th Cir. 2007) (cleaned up). It is "[r]ooted in overlapping principles of equity, comity, and federalism[.]" *Roshan v. McCauley*, 130 F.4th 780, 782 (9th Cir. 2025) (quoting *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)). The *Younger* Court recognized that, although the "National Government" may be "anxious . . . to vindicate and protect federal rights and federal interests," it must "always endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States." 401 U.S. at 44.

*Younger* abstention is appropriate in a civil case when state proceedings "(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Yelp Inc. v. Paxton*, 137 F.4th 944, 950–51 (9th Cir. 2025) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)). If these four requirements are met, a court must "then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* at 951 (quoting *ReadyLink*, 754 F.3d at 759).

The State Action is ongoing. "*Younger* abstention applies when state court proceedings are initiated before any proceedings of substance on the merits have taken place in the federal court, which is the case here." *Id.* (cleaned up). The Federal Action being filed "one day before" the State Action does not preclude the application of *Younger*. *Id.*; *see Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1226–27 (9th Cir. 2023) (the filing of a complaint does not constitute a substantial proceeding).

The State Action is a quasi-criminal enforcement action. Actions seeking civil penalties and punitive damages under HRS § 480-2 "fit[] comfortably within the class of" civil enforcement proceedings to which *Younger* applies. *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 738 (9th Cir. 2020); *see Yelp*, 137 F.4th at 951. "Nuisance abatement proceedings" likewise "fall into this category." *Citizens for Free Speech, LLC v. Cty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020). And taken as a whole, the State Action has many of the "features that are typically present" in a quasi-criminal enforcement action. *Bristol-Myers*, 979 F.3d at 737. The State "is . . . a party to" the State Action, "initiate[d]" it via "the filing of a formal complaint[,]" and seeks to "sanction" the State Action Defendants for their "wrongful act[s.]" *Id.* at 735–36 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013)).

The State Action implicates important state interests. "Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011). And as a matter of state law, the State "has a strong interest in remedying local harms related to corporate misconduct" of the kind alleged in the State Action. *Honolulu*, 537 P.3d at 1194; *see Edenfield v. Fane*, 507 U.S. 761, 769 (1993) (A state's "interest in ensuring the accuracy of commercial information in the marketplace is substantial.").

The State Action allows litigants to raise federal challenges. "State courts are presumed to be an adequate venue in which to assert federal challenges 'in the absence of unambiguous authority to the contrary.'" *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1124 (D. Haw. 2017) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)); *see Honolulu*, 537 P.3d at 1184 (federal defenses, including CAA preemption, raised in Hawaiʻi state court).

The Federal Action would have the practical effect of enjoining the State Action. "Indeed, the whole objective of [the United States'] federal lawsuit is to enjoin [the State's] civil enforcement action." *Yelp*, 137 F.4th at 951. The United States asks this Court to "[p]ermanently enjoin Defendants from taking actions to assert Hawaii's state law claims[.]" Compl. at 31. This is "the most offensive and

intrusive action that a federal court can take with respect to a state proceeding—to enjoin it altogether." *Gilbertson*, 381 F.3d at 977. *Younger* also applies to the United States' request for declaratory relief "because a declaration has the same practical effect on a state court proceeding as an injunction." *Id.*

And no exception applies. At the pleading stage, an exception must be supported by specific allegations in the plaintiff's complaint. *See N Grp. LLC v. Haw. Cty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1239 (D. Haw. 2009). Nothing in the United States' complaint indicates that the State Action was filed for an improper purpose or with no reasonable expectation of success. *See Yelp*, 137 F.4th at 951–53. In fact, the Hawaiʻi Supreme Court already allowed a similar lawsuit to proceed in state court, rejecting some of the federal defenses the United States repeats in this case. *Honolulu*, 537 P.3d at 1180–82. That the United States thinks such lawsuits are "weak, meritless, or even unconstitutional" is not enough. *Yelp*, 137 F.4th at 952. A "narrow" exception applies only when the lack of merit is "so palpable and overwhelming as to fairly demonstrate bad faith"; otherwise, the exception "would invite the very interference with state court proceedings that *Younger* seeks to prevent." *Id.* at 951–52. No other unusual circumstance, like a biased state tribunal, is alleged in the United States' complaint. *See id.* at 955.

The United States may object that "*Younger* abstention generally applies only where the federal plaintiffs are also defendants in the ongoing state proceedings."

*Herrera v. City of Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019). However, "parties with a sufficiently close relationship or sufficiently intertwined interests may be treated similarly for purposes of *Younger* abstention." *Id.* at 1047 (cleaned up). *Younger* applies in this case because the United States' purported interests are "so intertwined with those of the state court part[ies] that direct interference with the state court proceeding is inevitable[.]" *Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001). If the United States has any interests at issue in the Federal Action, such interests are necessarily intertwined with the State Action Defendants' interests because it is the State Action itself that supposedly threatens the interests of the United States. *See* Compl. ¶ 7. That is why the United States is asking this Court to directly interfere with the State Action by enjoining the State's claims *against the State Action Defendants*. Such interference is the entire purpose of the Federal Action, so "[p]lainly, '[t]he same comity considerations apply[.]'" *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (quoting *Allee v. Medrano*, 416 U.S. 802, 831 (1974) (Burger, C.J., concurring)).

The United States may also claim that *Younger* abstention is inapplicable when the federal government is a party. *See United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001). But *Morros* did not announce such a broad rule and is factually distinguishable. In *Morros*, a Nevada official denied the federal government's applications for water permits on the grounds that the water would be used to store

high-level nuclear waste in Nevada, violating state law. *Id.* at 698. The United States

sued for declaratory and injunctive relief in federal court, arguing that this

application of the state statute was preempted by a federal law requiring a site in

Nevada to be prepared for use as a national nuclear waste repository. *Id.* at 697, 699.

The Ninth Circuit held that *Younger* abstention was "inapplicable [t]here" because

the doctrine's "policy objective" is to "avoid unnecessary conflict between the state

and federal governments[,]" but "federal-state conflict" was "impossible to avoid"

"[b]y the time the United States [brought] suit . . . against [the] state[.]" *Id.* at 707–

08 (quoting *United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131,

136 (5th Cir. Unit B Sept. 1981)). It noted that the United States and Nevada "ha[d]

been at loggerheads" over the repository for "over ten years[,]" with numerous

lawsuits filed and further "substantial conflict and friction" expected before a

resolution. *Id.* at 708.

The factual and policy considerations present in *Morros* are absent here.[14]

There was no "direct conflict" between the United States and the State "before they

---

[14]    At least one district court has read *Morros* as consistent with the idea that
"[c]omity principles can justify abstention even when the United States is the
plaintiff." *United States v. Oregon*, No. 10-528-HA, 2011 WL 11426, at *5 (D. Or.
Jan. 4, 2011), *aff'd*, 503 F. App'x 525 (9th Cir. 2013). Pre-*Morros*, a different district
court rejected the argument that "*Younger* abstention is never applicable when the
United States seeks to assert a federal interest[,]" holding that the Fifth Circuit case
on which the *Morros* Court would later rely was "somewhat equivocal with respect
to *Younger* abstention" and "too dissimilar" on its facts. *United States v. California*,
639 F. Supp. 199, 206 (E.D. Cal. 1986).

arrive[d] at the federal courthouse." *Id.* (quoting *Composite*, 656 F.2d at 136). Instead, the United States precipitated a completely "unnecessary conflict between state and federal governments" by filing this highly unusual lawsuit against the State just before the State filed its state law case against private parties in state court. *Id.* at 707 (quoting *Composite*, 656 F.2d at 136). This conflict was neither "inevitable" nor "impossible to avoid[,]" and applying *Younger* would not "be futile." *Id.* at 708 (quoting *Composite*, 656 F.2d at 136). Rather, it would *end* the federal-state conflict, which is "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts[.]" *Younger*, 401 U.S. at 45.[15]

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the State's motion.

DATED:  Honolulu, Hawaiʻi, July 25, 2025.

/s/ *Kalikoʻonālani D. Fernandes*
KALIKOʻONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants

---

[15]    The State believes that the Anti-Injunction Act, 28 U.S.C. § 2283, also bars the United States' suit. But this argument is currently foreclosed by Ninth Circuit precedent that interprets *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957), as categorically exempting the United States from the Act. *See SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980). For appellate purposes, the State preserves its argument that *Leiter* was wrongly decided or that the Ninth Circuit should construe *Leiter* more narrowly.