ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
*Acting Deputy Assistant Attorney General* (D.C. Bar No. 974809)
JAMES R. MacAYEAL
*Senior Counsel*
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7415
Washington, D.C. 20044
Telephone: (202) 598-5396
Email: justin.heminger@usdoj.gov

Attorneys for Plaintiff United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff*,<br><br>  v.<br><br>STATE OF HAWAII; JOSHUA BOOTH GREEN, Governor of Hawaii, in his official capacity; and ANNE E. LOPEZ, in her official capacity as Hawaii Attorney General,<br><br>  *Defendants*. | No. 1:25-cv-00179-HG-WRP<br><br>**PLAINTIFF UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF 22)**<br><br>Judge: Hon. Helen Gillmor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION .............................................................................1

BACKGROUND ...............................................................................2

    A.    Federal law governs greenhouse gases and interstate
           pollution, balancing environmental protection with other
           national interests.................................................................2

    B.    The United States sues Hawaii to prevent it from
           usurping exclusive federal authority over intestate
           pollution...............................................................................5

STANDARD OF REVIEW ..................................................................6

ARGUMENT .....................................................................................6

I.    The United States has standing to sue Hawaii. ................................7

    A.    The United States has standing to protect its sovereign
           interests from injury caused by Hawaii's unlawful State
           Action. ................................................................................7

    B.    The United States also has standing to sue as parens
           patriae to protect the general welfare of its citizens...........12

    C.    The United States has standing to protect its proprietary
           interests as both a source and consumer of fossil fuels.......15

II.    The United States has a valid cause of action for equitable
      relief. .................................................................................17

III.    *Younger* abstention is inapplicable...........................................22

CONCLUSION..................................................................................26

CERTIFICATE OF COMPLIANCE.......................................................27

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)..................................................................8, 12, 15

*Am. Elec. Power Co., Inc. (AEP) v. Connecticut*,
  564 U.S. 410 (2011)........................................................................2, 3, 4

*Arizona v. United States*,
  567 U.S. 387 (2012)....................................................................8, 18, 22

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)..............................................................................19

*Bacon v. Woodward*,
  104 F.4th 744 (9th Cir. 2024) ...............................................................6

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)................................................................................7

*Bucks County v. BP P.L.C.*,
  No. 2024-01836, 2025 WL 1484203 (Pa. Ct. Com. Pl. May 16,
  2025) ....................................................................................................25

*Bud Antle, Inc. v. Barbosa*,
  45 F.3d 1261 (9th Cir. 1994) ...............................................................24

*Carroll v. Safford*,
  44 U.S. 441 (1845)................................................................................17

*Champion Int'l Co. v. Brown*,
  731 F.2d 1406 (9th Cir. 1984) .............................................................24

*City of Charleston v. Brabham Oil Co.*,
  No. 2020-CP-10-03975, 2025 S.C.C.P. LEXIS 189 (S.C. Ct.
  Com. Pl. Aug. 6, 2025)........................................................................25

*City of New York v. Chevron Corp.*,
  993 F.3d 81 (2d Cir. 2021) ..................................... 1, 2, 3, 4, 7, 11, 13, 15, 25

*City of Oakland v. BP plc,*
    325 F. Supp. 3d 1017 (N.D. Cal. 2018)........................................................25

*City of Oakland v. BP PLC,*
    969 F.3d 895 (9th Cir. 2020) ........................................................25

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001)........................................................21

*Diamond Alt. Energy, LLC v. EPA,*
    145 S. Ct. 2121 (2025)........................................................14, 15

*Ex parte Young,*
    209 U.S. 123 (1908)........................................................10

*Fed. Election Comm'n v. Cruz,*
    596 U.S. 289 (2022)........................................................6

*Geo Group, Inc. v. Newsom,*
    50 F.4th 745 (9th Cir. 2022) ........................................................16

*Herrera v. City of Palmdale,*
    918 F.3d 1037 (9th Cir. 2019) ........................................................24

*Illinois v. City of Milwaukee,*
    406 U.S. 91 (1972)........................................................3

*In re Debs,*
    158 U.S. 564 (1895)........................................................12, 18

*Int'l Paper Co. v. Ouellette,*
    479 U.S. 481 (1981)........................................................2

*Island Airlines, Inc. v. C. A. B.,*
    352 F.2d 735 (9th Cir. 1965) ........................................................20

*Kurns v. R.R. Friction Prods. Corp.,*
    565 U.S. 625 (2012)........................................................7

*La Union Pueblo Entero v. Abbott* (*LUPE*),
    604 F. Supp. 3d 512 (W.D. Tex. 2022) ........................................................9, 12

*Leiter Minerals, Inc. v. United States,*
   352 U.S. 220 (1957)................................................................20

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)..............................................................7, 11

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923)................................................................12

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   491 U.S. 350 (1989)................................................................23

*Parsons v. U.S. Dep't of Justice,*
   801 F.3d 701 (6th Cir. 2015) ................................................22

*Philip Morris Inc. v. Harshbarger,*
   946 F. Supp. 1067 (D. Mass. 1996)......................................10

*Sanitary Dist. of Chicago v. United States,*
   266 U.S. 405 (1925)........................................................12, 17, 18

*Scott v. Donald,*
   165 U.S. 107 (1897)................................................................17

*SEC v. Wencke,*
   622 F.2d 1363 (9th Cir. 1980) ..............................................20

*South Carolina v. Katzenbach,*
   383 U.S. 301 (1966)..........................................................12, 15

*Sprint Communications, Inc. v. Jacobs,*
   571 U.S. 69 (2013)..................................................................22

*State ex rel. Jennings v. BP Am. Inc.,*
   No. N20C-09-097, 2024 WL 98888 (Del. Super. Ct. Jan. 9,
   2024) ......................................................................................31

*Stauffer v. Brooks Bros.,*
   619 F.3d 1321 (Fed. Cir. 2010) ..............................................8

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)................................................................3, 6, 16

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.,*
    256 F.3d 879 (9th Cir. 2001) .......................................................13

*Tanner-Brown v. Haaland,*
    105 F.4th 437 (D.C. Cir. 2024).................................................6, 10

*Tex. Indus., Inc. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981).......................................................................2

*Trump v. Vance,*
    941 F.3d 631 (2d Cir. 2019) .......................................................23

*United States v. Alabama,*
    691 F.3d 1269 (11th Cir. 2012) ..................................................18

*United States v. Brand Jewelers, Inc.,*
    318 F. Supp. 1293 (S.D.N.Y. 1970) ...........................................12

*United States v. California,*
    No. 2:19-cv-2142, 2020 WL 8183945 (E.D. Cal. Feb. 26, 2020)..................9

*United States v. Composite State Bd. of Medical Examiners,*
    *State of Ga.,*
    656 F.2d 131 (5th Cir. 1981) .......................................................23

*United States v. Idaho,*
    623 F. Supp. 3d 1096 (D. Idaho 2022) ....................................8, 12

*United States v. Minnesota,*
    270 U.S. 181 (1926).....................................................................17

*United States v. Missouri,*
    114 F.4th 980 (8th Cir. 2024) .....................................................18

*United States v. Morros,*
    268 F.3d 695 (9th Cir. 2001) ................................................22, 23

*United States v. S. Carolina*,
   720 F.3d 518 (4th Cir. 2013) ..........................................................................18

*United States v. Stanley*,
   483 U.S. 669 (1987).........................................................................................17

*United States v. Students Challenging Regulatory Agency Procedures*
   (*SCRAP*), 412 U.S. 669 (1973).....................................................................22

*United States v. Texas*,
   557 F. Supp. 3d 810 (W.D. Tex. 2021) ....................................................18, 22

*United States v. Texas*,
   566 F. Supp. 3d 605 (W.D. Tex. 2021) ....................................................12, 13

*United States v. Texas*,
   719 F. Supp. 3d 640 (W.D. Tex. 2024) ..........................................................10

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 ......................................................................................................3

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021)..........................................................................................16

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000)......................................................................................8, 11

*W. Virginia v. United States*,
   479 U.S. 305 (1987)..........................................................................................19

*Woodfeathers, Inc. v. Washington County*,
   180 F.3d 1017 (9th Cir. 1999) ........................................................................24

*Yelp Inc. v. Paxton*,
   137 F.4th 944 (9th Cir. 2025) .........................................................................24

*Younger v. Harris*,
   401 U.S. 37 (1971)............................................................................................22

## Statutes

Clean Air Act
    42 U.S.C. § 7401 *et seq.* ................................................................3

    42 U.S.C. § 7411(a)(1) ...............................................................4

Global Climate Protection Act
    Pub. L. No. 100-204, 101 Stat. 1331 (1987)
    (*reprinted at* 15 U.S.C. § 2901 note)................................................4

## Other Authorities

*Protecting American Energy From State Overreach*,
    Exec. Order No. 14260, 90 Fed. Reg. 15,513 (Apr. 8, 2025) ....................4, 5

United Nations Framework Convention on Climate Change,
    S. Treaty Doc. No. 102-38, 1771 U.N.T.S. 107 ..............................................4

S. Res. 98, 105th Cong., 1st Sess. (July 25, 1997) ....................................................5

Framework Convention, Kyoto Protocol (Dec. 10, 1997), 37 I.L.M. 22
    (1998)..............................................................................................5

Brief of Massachusetts et al. as Amici Curiae, *Whole Woman's Health
    v. Jackson*, No. 21-463, 2021 WL 5016707 (S. Ct. Oct. 27,
    2021) ........................................................................................ 19

## INTRODUCTION

This lawsuit is a textbook example of dual federalism at work. Exercising its proper role as the federal sovereign, the United States has sued Hawaii to protect uniquely federal interests and to enforce the structural limits that the U.S. Constitution imposes on States. In its state court lawsuit filed one day later (the State Action), Hawaii asserted claims under its state law to hold energy companies for worldwide emissions of greenhouse gases from burning fossil fuels. Because federal law preempts those claims, *see, e.g.*, *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), the United States seeks declaratory relief and an injunction prohibiting Hawaii from usurping exclusive federal authority.

None of the three grounds Hawaii raises is a barrier to this suit. First, the United States has standing to protect its sovereign, parens patriae, and proprietary interests. Second, the United States has an equitable cause of action to vindicate those interests in federal court. And finally, *Younger* abstention is inapplicable because the United States is the plaintiff. Thus, the Court should deny Hawaii's request for judgment on the pleadings and allow the United States to protect its sovereign interests from unlawful state interference.

1

## BACKGROUND

**A.    Federal law governs greenhouse gases and interstate pollution, balancing environmental protection with other national interests.**

The Supreme Court has long recognized that "our federal system does not permit [certain] controvers[ies] to be resolved under state law." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981). This includes areas in which "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id.* For these subjects, the "basic scheme of the Constitution . . . demands" a federal rule of decision. *Am. Elec. Power Co., Inc. (AEP) v. Connecticut*, 564 U.S. 410, 421 (2011).

This is why, since the Founding, federal law has applied to disputes involving cross-boundary pollution, which implicate "uniquely federal interests," including the "conflicting rights of states and our relations with foreign nations." *City of New York*, 993 F.3d at 90-92 (cleaned up). There is no history or tradition of States regulating interstate, much less global, pollution or "climate change." And for good reason: If each State could apply its own law in this area, the result would be "an irrational system of regulation" that "lead[s] to chaotic confrontation between sovereign states" and "uncertainty" over the governing legal standard, as polluters would have to comply with the laws "of all states potentially affected by" an otherwise "lawful discharge." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496–97 (1981) (quotation

marks omitted). Because the structure of our Constitution requires "a uniform rule of decision" for "controvers[ies]" involving interstate pollution, it "demands . . . applying federal law and not the varying . . . law of the individual States." *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6, 107 n.9 (1972). Until Congress acted, interstate pollution was governed by federal common law. *See id.* at 103, 105 n.6; *AEP*, 564 U.S. at 421.

In 1963, Congress enacted (and later amended) the Clean Air Act. *See* 42 U.S.C. § 7401 *et seq.* The Act creates a comprehensive national program for regulating "pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft," subject to various statutory standards for regulation that apply to each type of source. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 308 (2014). In 1970, Congress vested authority to implement the Act in the Environmental Protection Agency (EPA). *City of New York*, 993 F.3d at 87.

In determining whether and how to regulate interstate air pollution, EPA must strike a "careful balance" between environmental protection, on the one hand, and "energy production, economic growth, foreign policy, and national security, on the other." *Id.* at 93. Chief among these interests is ensuring the Nation maintains a reliable energy supply—an objective emphasized by Congress, the Supreme Court, and the President. *See* 42 U.S.C. § 7411(a)(1) (requiring stationary source emission

3

standards to reflect "the cost of achieving such [emissions] reduction and any nonair quality health and environmental impact and energy requirements"); *AEP*, 564 U.S. at 427 (explaining that "the environmental benefit potentially achievable" through regulation must be weighed against "our Nation's energy needs and the possibility of economic disruption"); *Protecting American Energy From State Overreach*, Exec. Order No. 14260, § 1, 90 Fed. Reg. 15,513 (Apr. 8, 2025).

Because climate change "is a global problem that the United States cannot confront alone," the federal government "has worked cooperatively with foreign governments through diplomatic channels" to address the issue. *City of New York*, 993 F.3d at 88. Congress directed the executive branch to develop a "coordinated national policy on global climate change" through the Global Climate Protection Act, Pub. L. No. 100-204, Title XI, § 1103, 101 Stat. 1331, 1407-09 (1987) (reprinted at 15 U.S.C. § 2901 note), and the federal government has been carefully coordinating and refining that policy for decades. Since 1992, for example, the United States has been party to the Senate-ratified United Nations Framework Convention on Climate Change, S. Treaty Doc. No. 102-38, 1771 U.N.T.S. 107, which creates an international framework to address greenhouse gas emissions.

At the same time, the United States has rejected more restrictive measures, recognizing that more regulation does not always serve national interests. The

United States is not, for example, party to the Kyoto Protocol of 1997, *see* Framework Convention, Kyoto Protocol (Dec. 10, 1997), 37 I.L.M. 22 (1998), which sets binding greenhouse gas emission reduction targets on certain Framework Convention parties, S. Res. 98, 105th Cong., 1st Sess. (July 25, 1997).

**B.    The United States sues Hawaii to prevent it from usurping exclusive federal authority over intestate pollution.**

As President Trump observed, an "affordable and reliable domestic energy supply is essential to the national and economic security of the United States, as well as our foreign policy." ECF 1, Compl. ¶ 1 (quoting Executive Order 14260, § 1). Yet some States have pursued restrictive policies and regulations that have strangled development of America's abundant energy resources. *Id*. ¶ 1. And other States have sued energy companies, seeking "crippling damages" that threaten to weaken national security and harm hardworking Americans. E.O. 14260 § 1.

In April 2025, the Governor of Hawaii announced the State's plan to join a handful of States in filing a lawsuit that would burden the Nation's energy production. Compl. ¶ 4. On April 30, 2025, the United States sued Hawaii, asserting standing to vindicate its sovereign, proprietary, and parens patriae interests. *Id*. ¶ 7. Hawaii's state-law claims are preempted by the U.S. Constitution and the Clean Air Act. *Id*. ¶¶ 28-88. The next day, Hawaii filed the State Court Action. ECF 22-2.

Hawaii filed its Answer, ECF 19, and now seeks judgment on the pleadings. ECF 22.

## STANDARD OF REVIEW

On a motion for judgment on the pleadings, the Court accepts the material allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *Bacon v. Woodward*, 104 F.4th 744, 749 (9th Cir. 2024). Beyond liberally construing the pleadings, "[t]he Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim." *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) (collecting cases). Thus, courts "must consider standing separately from the merits by assuming that the plaintiff will ultimately prevail on [its] legal theory." *Id.*; *see Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022).

## ARGUMENT

The United States sued Hawaii to vindicate its sovereign interests in the supremacy of federal law over interstate and global pollution. This case raises pure questions of law that this Court is well-equipped to resolve and as to which there is a sharp and concrete controversy between the United States and Hawaii. None of Hawaii's threshold arguments—standing, cause of action, and *Younger* abstention—poses an obstacle to this case proceeding. Thus, this Court should fulfill its "virtually unflagging" obligation to "hear and decide cases within its jurisdiction." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (cleaned up).

## I.     The United States has standing to sue Hawaii.

The United States has standing to seek relief against preempted state action, such as Hawaii's State Action. To establish standing, a party must show (1) an injury to a legally protected interest, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The United States' Complaint alleges three types of injury, each independently sufficient for standing.

### A.     The United States has standing to protect its sovereign interests from injury caused by Hawaii's unlawful State Action.

The United States has standing to protect its sovereign interests from state action that usurps federal authority. Regulation of interstate pollution is a subject reserved exclusively to federal law, *see* Background Section A, and Hawaii's State Action causes an ongoing injury to the United States' sovereignty by usurping that federal authority. That injury includes through lawsuits requesting significant damages to "govern[] conduct and control[] policy." *City of New York*, 993 F.3d at 92 (explaining that a "regulation can be effectively exerted through an award of damages" requested in a lawsuit) (quoting *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625 (2012)); *see BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 573 n. 17 (1996) ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute.").

7

The federal government, like each state, has cognizable "sovereign interests," not only in its "power to create and enforce a legal code, both civil and criminal," but also in "recognition [of that code] from other sovereigns." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982); *Arizona v. United States*, 567 U.S. 387, 398 (2012) ("Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect."). As the Supreme Court has explained: "It is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to its sovereignty arising from violation of its laws." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).

In *Arizona*, 567 U.S. at 392-93, the Supreme Court exercised jurisdiction over a pre-enforcement suit by the United States to enjoin the enforcement of state law because of federal preemption. The Court struck certain provisions of the state law as preempted, without questioning whether the United States had standing to seek injunctive relief against a preempted state law. *Id*. at 416.

Likewise, the lower courts have repeatedly applied this principle. *See, e.g.*, *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1326 (Fed. Cir. 2010) ("From the government's perspective, a harm arises from an 'injury to its sovereignty arising from violation of its laws.'") (quoting *Vermont Agency*); *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022) ("the United States' sovereign interests are

harmed when its laws are violated"); *United States v. California*, No. 2:19-cv-2142, 2020 WL 8183945, at *3 (E.D. Cal. Feb. 26, 2020) ("The United States has plausibly alleged its claimed injury—the usurpation of federal authority to conduct foreign affairs…."). "Undoubtedly," then, "the United States suffers a concrete harm to its sovereignty when its laws are violated" by a state. *La Union del Pueblo Entero v. Abbott* (*LUPE*), 604 F. Supp. 3d 512, 526 (W.D. Tex. 2022).

This same sovereign interest lies at the heart of this case. As alleged in the Complaint, Hawaii's state-law claims injure the United States' sovereignty by intruding on the regulation of interstate and global air pollution, areas that are subject to exclusive federal authority. Compl. ¶¶ 7, 15-17, 28-40. The Clean Air Act "creates a comprehensive program for regulating air pollution in the United States." *Id*. ¶ 32. Hawaii's state-law claims "impermissibly regulate out-of-state greenhouse gas emissions and obstruct[] the Clean Air Act's comprehensive federal-state framework and EPA's regulatory discretion." *Id*. ¶ 31 (citation omitted). Hawaii's State Action "creates a patchwork of state-level penalties that … frustrates the Clean Air Act's goal of efficiency and predictability," interferes with its "integrated approach to air pollution control," *id*. ¶ 37, and "obstructs EPA's discretion to balance environmental, economic, and energy considerations in regulating greenhouse gases," *id*. ¶ 38.

The Complaint is filled with other allegations that the State Action injures core federal interests, such as interfering with interstate commerce (Compl. ¶ 58-63)

and foreign commerce (*id*. ¶ 68-71). The Complaint also details how the State Action harms the United States' foreign policy on greenhouse gas regulation. *Id*. ¶¶ 18-27; *id*. ¶¶ 81-86. And a declaratory judgment and injunction from this Court will fully redress the United States' sovereign injuries. That is sufficient for standing.

Hawaii cites no case to the contrary. *Cf.* Mot. 5-13. Indeed, Hawaii cites no case denying standing to the United States in any context. Rather, Hawaii mainly relies on the flawed assumption that the United States would be injured only if Hawaii obtains a final judgment in the State Action. That has it backwards. This Court must assume "the merits of [the United States'] legal claim." *Tanner-Brown*, 105 F.4th at 445. Courts have also rejected this very argument, concluding that this approach is too broad because it would "prevent most cases brought under *Ex parte Young* from being heard in time to give the relief that the *Young* doctrine sanctions." *Philip Morris Inc. v. Harshbarger,* 946 F. Supp. 1067, 1075-76 (D. Mass. 1996).

In all events, the United States suffered "per se irreparable harm" when Hawaii initiated its State Action, because that conduct usurps exclusive federal authority to regulate greenhouse gas emissions. *United States v. Texas*, 719 F. Supp. 3d 640, 695 (W.D. Tex. 2024) (concluding that interfering with exclusive federal authority inflicts "per se irreparable harm" on the United States). So the very *attempt*, let alone the *existence*, of the State Action inflicts a concrete and continuing injury to the United States by flouting the supremacy of federal law over extraterritorial

conduct and interstate pollution. That injury is actual, imminent, and concrete. *See Vermont Agency*, 529 U.S. at 771 (holding that a complaint "asserts an injury to the United States" if it alleges an "injury to its sovereignty").

Next, Hawaii misses the mark when it asserts that the foreign-affairs injury is too speculative. Mot. 9-10. "At the pleading stage," the United States need only present "general factual allegations" that the State Action interferes with its foreign-affairs interests because the Court will "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (cleaned up). The Complaint comfortably clears this low bar. *See* Compl. ¶¶ 18-27; *id*. ¶¶ 81-86.

Finally, Hawaii's ripeness argument (Mot. 10) is yet another futile attempt to escape this Court's jurisdiction in favor of Hawaii's preferred judicial forum. Ripeness does not require the United States to wait for *all* the harm to occur before suing to protect its sovereign interests. And this suit presents pure questions of law about the proper spheres of federal and state authority over interstate pollution. So far, the only federal court of appeals to have resolved the merits of these legal questions did so at the pleadings stage by affirming the district court's dismissal of a city's complaint asserting state-law claims. *See City of New York*, 993 F.3d at 88-89. The United States' Complaint tees up for this Court a ripe controversy on the same legal questions resolved in *City of New York*.

**B.    The United States also has standing to sue as parens patriae to protect the general welfare of its citizens.**

Separately, the United States has "standing in court" to sue for "injury to the general welfare." *In re Debs*, 158 U.S. 564, 584 (1895). This encompasses an array of injuries, such as interference with "interstate and foreign commerce," *Sanitary Dist. of Chicago v. United States*, 266 U.S. 405, 426 (1925), "widespread deprivations . . . of property through 'state action,'" *United States v. Brand Jewelers, Inc.*, 318 F. Supp. 1293, 1299 (S.D.N.Y. 1970), violations of civil rights, *LUPE*, 604 F. Supp. 3d at 523, and any other injury to "the general welfare" or the "public at large," *United States v. Texas*, 566 F. Supp. 3d 605, 640 (W.D. Tex. 2021); *see also United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022) ("As a general principle, the United States may sue to redress widespread injuries to the general welfare.").

Relatedly, "the Federal Government [is] the ultimate parens patriae of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). With respect to federal law, the United States "represents [the American People] as parens patriae" and has standing to assert injuries on behalf of American citizens. *Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923). The Supreme Court has explained that a parens patriae suit asserts "quasi-sovereign" injuries on behalf of the public, such as injury to the "economic" or "physical" "health and well-being" of a "substantial segment" of the population. *Snapp*, 458 U.S. at 607. Thus, "[t]he same sovereign

12

interests" support the United States' standing as guardian of the "general welfare" under *Debs* and as parens patriae under *Mellon*. *Texas*, 566 F. Supp. 3d at 641.

As alleged in the Complaint, the United States seeks "to protect the economic well-being of its citizens and the national energy market from Hawaii's attempts to impose extraterritorial and excessive burdens on fossil fuel companies, which will raise energy costs for consumers nationwide and disrupt the uniform regulation of fossil fuel production." Compl. ¶ 7; *see also City of New York*, 993 F.3d at 93 (recognizing that it is "common sense and basic economics" that the "increased cost of conduct will make that conduct less common" and more expensive (cleaned up)).

Hawaii's conclusory assertions (Mot. 12-13) fail to acknowledge that the Complaint directly addresses the requirements for parens patriae standing. Consistent with *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001), the United States has alleged that the State Action will injure a "substantial segment of the population"—American consumers of petroleum products—by "rais[ing] energy costs for consumers nationwide and disrupt[ing] the uniform regulation of fossil fuel production." Compl. ¶ 7; *see also id.* ¶ 44. And the United States has "articulate[d] an interest apart from the interests of particular private parties" and "express[ed] a quasi-sovereign interest," *Wiyot Tribe*, 256 F.3d at 885 (cleaned up), in ensuring that state law does not intrude on a core area of federal

law. *See, e.g.*, Compl. ¶¶ 20-41 (articulating the United States' distinct interests in the Clean Air Act's regulatory framework).

Contrary to Hawaii's contentions (Mot. 8-12), the United States has alleged an imminent injury to its parens patriae interests caused by Hawaii's State Action. The State Action seeks to extract large sums of money from energy producers based mainly on out-of-state emissions. Compl. ¶¶ 4, 7, 14, 39, 62. When describing Hawaii's plans to file the State Action, its Governor discussed his desire for "a couple of billion extra dollars from the fossil fuel companies." *Id*. ¶ 71. And those damages "would increase energy costs for consumers and businesses nationwide, as those costs as passed through the interstate energy market." *Id*. ¶ 62.

At this stage, the Court must accept these allegations as true. But they also ring true under basic economic principles and common sense. Hawaii's State Action seeks damages from energy companies, and some, if not all, of those damages will be passed on to those companies' customers—the American citizens that the United States seeks to protect. As the Supreme Court has explained, "when the government regulates . . . a business, the regulation . . . may cause downstream or upstream economic injuries to others in the chain, such as certain manufacturers, retailers, suppliers, competitors, or customers." *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136 (2025) (cleaned up). And forcing energy producers to "internalize the costs of

climate change," as Hawaii seeks to do with its State Action would presumably affect the price and production of fossil fuels. *City of New York*, 993 F.3d at 103; *see also Snapp*, 458 U.S. at 593 (for parens patriae standing, "the indirect effects of the injury must be considered as well").

Even if the billions of dollars that Hawaii plans to seek from energy companies did not directly affect energy prices for consumers, those amounts plausibly cause "economic injuries to others in the chain," such as "manufacturers, retailers, suppliers," or "competitors." *Diamond Alternative*, 145 S. Ct. at 2136. And those economic injuries will harm the United States' national energy policy and the national energy market. Compl. ¶¶ 1–3. These allegations are sufficient to support the United States' standing to seek redress for injuries to the general welfare of the country and its citizens as "the ultimate parens patriae of every American citizen." *Katzenbach*, 383 U.S. at 324.

### C.     The United States has standing to protect its proprietary interests as both a source and consumer of fossil fuels.

Finally, the United States has standing to protect its proprietary economic interests from being injured by the State Action. The United States plays a role at both ends of the energy market. First, the United States earns revenue from fossil fuel leasing on federal lands, which generated over $13.8 billion in 2024. Compl. ¶ 3-4, 7 n.1. Any decrease in leasing or oil production on federal lands injures the United States because it will necessarily reduce revenue. And the United States purchases

fossil fuels. *Id*. Any increase in fuel costs therefore injures the United States' pecuniary interests. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (even "one dollar" lost is an Article III injury).

Hawaii tries to downplay its State Action as a speculative proposition, with "multiple layers of contingencies" before energy companies could "someday" face an "adverse judgment." Mot. 8-13. But the whole point of Hawaii's State Action is to achieve that result. The fact that Hawaii will need to proceed through litigation to reach that outcome means that the economic injury to the United States is a future one, not that it is too speculative to constitute an Article III injury. And the United States' allegations of future injury are imminent because there is a "substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (cleaned up); *see also Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753-54 (9th Cir. 2022) (holding the United States had standing to challenge California law because the injuries were "sufficiently imminent even though they will not occur for at least two years").

Finally, the United States has plausibly alleged that a favorable decision from this Court would redress its injuries. *Cf.* Mot. 12. If this Court grants the declaratory relief and injunction requested in the Complaint, then Hawaii would no longer be able to usurp exclusive federal authority to regulate greenhouse gas emissions. Nor would Hawaii inflict the downstream costs just described on the consumer and the economy.

**II.    The United States has a valid cause of action for equitable relief.**

The United States has an equitable cause of action to challenge preempted state action that interferes with the federal government's sovereign rights, pecuniary interests, and the general welfare.

This cause of action is grounded in history and tradition. *See, e.g.*, *Scott v. Donald*, 165 U.S. 107, 111-112 (1897) (equitable action against state official for unconstitutional acts); *Carroll v. Safford*, 44 U.S. 441, 463 (1845) (expressing "no doubt" that "relief may be given in a court of equity … to prevent an injurious act by a public officer, for which the law might give no adequate redress" when the officer exceeded his statutory authority). As the Supreme Court has explained, "redress designed to halt or prevent [a] constitutional violation" is a "traditional form[] of relief" that "d[oes] not ask the Court to imply a new kind of cause of action." *United States v. Stanley*, 483 U.S. 669, 683 (1987) (cleaned up). Thus, the Court has long endorsed the United States' "right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfilment of its obligations"—a right "vested in it as a sovereign"—without the need to identify a specific statutory cause of action. *United States v. Minnesota*, 270 U.S. 181, 194 (1926). Indeed, the teaching of the entire *Debs* line of decisions is that when the United States' sovereign interests are at stake, "no statute is necessary to authorize the suit." *Sanitary Dist.*, 266 U.S. at 425-26.

17

Over the past century, the United States has repeatedly asserted and prevailed on an equitable cause of action in the Supreme Court and elsewhere. *E.g.*, *Sanitary Dist.*, 266 U.S. at 426 ("The Attorney General by virtue of his office may bring this proceeding and no statute is necessary to authorize the suit."); *In re Debs*, 158 U.S. at 584, 599 ("Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other[.]"); *United States v. Missouri*, 114 F.4th 980, 986 (8th Cir. 2024) (holding the United States could sue in the "equitable tradition of suits to enjoin unconstitutional actions by state actors" and collecting cases); *United States v. Texas*, 557 F. Supp. 3d 810, 820 (W.D. Tex. 2021) (listing six preemption cases brought by the United States between 2018 and 2020).

The United States has sued in equity to challenge as preempted state laws that interfere with the federal government's "broad, undoubted power over the subject of immigration." *Arizona*, 567 U.S. at 394; *see, e.g.*, *United States v. S. Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012). The parties in those cases took it for granted that the United States could sue in equity even without express statutory authority. In *Arizona*, the Supreme Court expressed no doubt about the propriety of such suits in affirming an injunction barring enforcement of several provisions of the challenged state law. 567 U.S. at 416. And this is

the same equitable cause of action that Hawaii itself endorsed in an amicus brief recently filed at the Supreme Court. *See* Brief of Massachusetts et al. as Amici Curiae, *Whole Woman's Health v. Jackson*, No. 21-463, 2021 WL 5016707, at *6 (S. Ct. Oct. 27, 2021) (arguing that "the United States . . . could seek equitable relief to redress [a state statute's] violation" of federal law); *see also id.* at *7 ("the United States has appropriately sought equitable relief to restore the very supremacy of our Constitution").

The United States seeks traditional equitable relief tailored against defendants, the State of Hawaii and the executive officers responsible for the unlawful State Action. This is consistent with "a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (recognizing "ability to sue to enjoin unconstitutional actions by state and federal officers" in "equity"). And it is consistent with a founding principle that "States retain no sovereign immunity as against the Federal Government." *W. Virginia v. United States*, 479 U.S. 305, 311 n.4 (1987).

Hawaii's three counterpoints are misguided. *Cf.* Mot. 15-18. First, though federal courts generally do not interfere in state court proceedings, the United States filed this suit *before* Hawaii filed in state court. *Cf.* Mot. 15. Thus, the United States' right to adjudicate its first-filed suit takes precedence over Hawaii's later-filed suit, among other reasons. Put differently, the state court should yield to this Court's

19

judgment, not the other way around. Consistent with that view, the state court has temporarily stayed the State Action, pending this Court's resolution of Hawaii's Motion. *See* ECF 25-2.

And the Ninth Circuit has affirmed this Court's conclusion that the United States "may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies." *Island Airlines, Inc. v. C. A. B.*, 352 F.2d 735, 744 (9th Cir. 1965) (quotation marks omitted). "This is true, and injunctive relief will be granted, even though a state court action is pending raising the same issue, but with different parties." *Id.* (cleaned up). The United States' suit falls comfortably within the contours of *Island Airlines*.

As Hawaii concedes (Mot. 25 n.15), the Anti-Injunction Act does not apply to the United States. *See Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957); *SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980). Because that Act does not apply, if the United States prevails on the merits of its claims, this Court has authority to enter an injunction against Hawaii and its executive officials.

Second, the United States has properly resorted to equity because it lacks an adequate legal remedy and asserts a proprietary interest. *Cf.* Mot. 15-17. As the United States has explained (Argument Point I.A.), the State Action violates federal law and injures the United States' sovereign interests. "[I]njunctive relief has long

been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

The United States' injuries cannot be compensated for by damages. Nor would the United States' injuries be remedied by attempting to participate in the unlawful State Action. For one thing, Hawaii expressly reserves its position on whether the United States can intervene in the State Action. Mot. 16 n.10. For another, Hawaii does not explain how the United States could pursue its affirmative claims against Hawaii if it successfully intervened. *Cf. id*. at 15-17. Underscoring the tenuous nature of its position, Hawaii proposes that the United States could "offer[] assistance" to the State Action defendants, "including by moving to file an *amicus* brief." *Id*. at 16. But the possibility of filing an amicus brief is not an adequate legal remedy to the United States' sovereign injury.

Third, in tension with Hawaii's assertion that the United States must first attempt to intervene in the State Action, Hawaii contends (Mot. 17-18) that the United States cannot obtain equitable relief because it is not under a direct threat of enforcement by Hawaii. But this argument overlooks the fundamental point that the United States is suing to prevent injury to *its* interests, not to the interests of the State Action defendants. Usurping federal authority to regulate global greenhouse gas emissions in a lawsuit against energy producers inflicts Article III injury on the United States, even if it is not the subject of the enforcement action. *See United States v. Students*

21

*Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 688-90 (1973) (indirect "attenuated line of causation to the eventual injury" was sufficient to satisfy standing requirements at the pleading stage); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015) ("[T]he fact that an injury is indirect does not destroy standing as a matter of course.").

*Arizona* is just one example where the United States obtained equitable relief against a preempted state law despite not being itself subject to a threat of enforcement. 567 U.S. at 416; *see also Texas*, 557 F. Supp. 3d at 820 (listing preemption cases brought by the United States). The United States has clear sovereign, parens patriae, and proprietary interests that are harmed by the State Action, and an injunction is the proper remedy to prevent those harms.

## III.    *Younger* abstention is inapplicable.

Contrary to Hawaii's position (Mot. 18-25), under controlling Ninth Circuit precedent, the *Younger* abstention doctrine does not apply because the United States is the plaintiff. *See United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001). Controlling precedent aside, the doctrine is inapplicable for multiple other reasons.

Federal courts are obliged to decide cases within the scope of federal jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that when there is a pending state criminal proceeding, federal courts should abstain from enjoining the proceeding. *Id.* at

41. *Younger* abstention is based partly on traditional principles of equity, but also on considerations of comity. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364 (1989). But in *Morros*, the Ninth Circuit held that when the United States is the plaintiff in the federal action seeking to enjoin a state proceeding, *Younger* abstention is inapplicable. 268 F.3d at 707. Because the United States is the plaintiff in this case, *Morros* precludes abstention.

Hawaii tries (Mot. 23-25) to distinguish *Morros*, but the Ninth Circuit could not have been clearer: "We *hold* that *Younger* is inapplicable here for an even more basic reason." *Id*. at 707 (emphasis added). "Whether it is labeled 'comity,' 'federalism,' or some other term, the policy objective behind *Younger* abstention is to 'avoid unnecessary conflict between state and federal governments.'" *Id*. (cleaned up). Thus, the Ninth Circuit joined the "Third, Fifth, and Eleventh Circuits" in the view that "this policy lacks force *where the United States is a litigant*." *Id*. (emphasis added); *see also Trump v. Vance*, 941 F.3d 631, 638 & n.9 (2d Cir. 2019) (observing that "nearly every circuit to address the issue [of whether *Younger* abstention is appropriate where the Federal Government seeks to invoke federal jurisdiction] has either held or suggested that abstention is unwarranted in such circumstances."); *United States v. Composite State Bd. of Medical Examiners, State of Ga.*, 656 F.2d 131, 137 (5th Cir. Unit B Sep. 1981).

Even if *Morris* were not a barrier, the Court should deny *Younger* abstention for two other, independent reasons.

First, *Younger* abstention "generally applies only where the federal plaintiffs are also defendants in the ongoing state proceeding." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019). Because the United States is not a defendant in the State Action, Hawaii contends (Mot. 22-23) that the United States' interests are "intertwined" with those of the State Action defendants. But the United States has distinct sovereign and parens patriae interests that do not overlap with the interests of the State Action defendants. *See* Argument Points I.A. and I.B.

Second, *Younger* abstention requires the state case to present an "important state interest." *Yelp Inc. v. Paxton*, 137 F.4th 944, 950-51 (9th Cir. 2025). But when the state proceeding involves claims that are clearly preempted by federal law, no significant state interests are served by *Younger* abstention. *See Champion Int'l Co. v. Brown*, 731 F.2d 1406, 1408-09 (9th Cir. 1984) (rejecting *Younger* abstention because "Montana has no cognizable state interest in enforcing those age discrimination laws that are preempted by federal law"). Thus, when a claim of preemption is facially conclusive or readily apparent, abstention should be denied. *See, e.g.*, *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1022 (9th Cir. 1999); *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1272-73 (9th Cir. 1994).

24

Preemption is readily apparent because Hawaii's State Action seeks to hold companies liable for out-of-state emissions of greenhouse gases based on in-state law. "It is precisely *because* fossil fuels emit greenhouse gases," *City of New York*, 993 F.3d at 91, that Hawaii seeks to recover billions of dollars in damages against energy producers based on out-of-state emissions. The only federal court of appeals to have considered the merits of that issue has held that such state-law claims are preempted. *Id*. at 85-86. Nor can "[a]rtful pleading" of state-law claims transform the State Action "into anything other than a suit over global greenhouse gas emissions." *Id*. at 91.

In short, "our federal structure" simply "does not allow [Hawaii] law, or any State's law, to address" claims for global greenhouse gases. *Bucks County v. BP P.L.C.*, No. 2024-01836, 2025 WL 1484203, at *8 (Pa. Ct. Com. Pl. May 16, 2025). Many state and federal courts have joined this holding. *See id*. at *6 (joining "a growing chorus of state and federal courts" that dismissed state-law claims predicated on global greenhouse gases, including, among others, *City of New York*, 993 F.3d at 81; *City of Oakland v. BP plc*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *vacated and remanded on other grounds* 969 F.3d 895 (9th Cir. 2020); *State ex rel. Jennings v. BP Am. Inc.*, No. N20C-09-097, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024)); *see also City of Charleston v. Brabham Oil Co.*, No. 2020-CP-10-03975, 2025 S.C.C.P. LEXIS 189, at *4 (S.C. Ct. Com. Pl. Aug. 6, 2025) (subscribing to

the same "growing chorus" and noting that the "ranks of this chorus are swelling for sound public policy reasons").

Thus, for these three independent reasons, *Younger* abstention does not apply.

## CONCLUSION

For all these reasons, the Court should deny Hawaii's Motion for Judgment on the Pleadings.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

/s/ *Justin D. Heminger*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
*Acting Deputy Assistant Attorney General*
JAMES R. MacAYEAL
*Senior Counsel*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
Telephone: (202) 598-5396
Email: justin.heminger@usdoj.gov

September 24, 2025

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of LR7.4(b) because, excluding the parts of the document exempted by the rule, this document contains 6,204 words, according to the count of Microsoft Word.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

Counsel for the United States