ANNE E. LOPEZ                    7609
Attorney General of Hawai'i
KALIKO'ONĀLANI                  9964
D. FERNANDES
Solicitor General
LAUREN K. CHUN                  10196
First Deputy Solicitor General
THOMAS J. HUGHES                11059
CAITLYN B. CARPENTER           11928
Deputy Solicitors General
Department of the Attorney General,
  State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Tel:  (808) 586-1360
E-mail:  kaliko.d.fernandes@hawaii.gov
         lauren.k.chun@hawaii.gov
         thomas.j.hughes@hawaii.gov
         caitlyn.b.carpenter@hawaii.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF HAWAI'I; JOSHUA BOOTH GREEN, Governor of Hawai'i, in his official capacity; and ANNE E. LOPEZ, in her official capacity as Hawai'i Attorney General,<br><br>Defendants. | No. 1:25-cv-00179-HG-WRP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 22]; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. Helen Gillmor |

## TABLE OF CONTENTS

A.    The United States lacks standing....................................................................2

B.    The United States lacks an equitable cause of action....................................7

C.    *Younger* abstention applies. ..........................................................................11

D.    Conclusion ...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alcoa, Inc. v. Bonneville Power Admin.*,
  698 F.3d 774 (9th Cir. 2012) .................................................................6

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................8

*California ex rel. Harrison v. Express Scripts, Inc.*,
  139 F.4th 763 (9th Cir. 2025) .............................................................11

*City & Cty. of Honolulu v. Sunoco LP*,
  537 P.3d 1173 (Haw. 2023) ........................................................... 2, 15

*City of New York v. Chevron Corp.*,
  993 F.3d 81 (2d Cir. 2021) .................................................................2

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................................9

*Green v. City of Tucson*,
  255 F.3d 1086 (9th Cir. 2001) ...........................................................14

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 30 (1999) ........................................................................ 9, 10

*Herrera v. City of Palmdale*,
  918 F.3d 1037 (9th Cir. 2019) ...........................................................14

*Huffman v. Pursue, Ltd.*,
  420 U.S. 592 (1975) ............................................................................5

*In re Debs*,
  158 U.S. 564 (1895) ............................................................................8

*Island Airlines, Inc. v. Civil Aeronautics Bd.*,
  352 F.2d 735 (9th Cir. 1965) ............................................................8, 9

*Kurns v. R.R. Friction Prods. Corp.*,
  565 U.S. 625 (2012) ............................................................................4

*Leiter Minerals, Inc. v. United States*,
   352 U.S. 220 (1957) ...........................................................................8

*Rosales v. Ehnes*,
   No. 10-6495 GAF (FFMx), 2010 WL 11603082 (C.D. Cal. Oct. 25, 2010) .......15

*Sanitary Dist. of Chi. v. United States*,
   266 U.S. 405 (1925) ...........................................................................8

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
   279 F.3d 817 (9th Cir. 2002).................................................................3

*Scott v. Donald*,
   165 U.S. 107 (1897) ...........................................................................8

*SEC v. Wencke*,
   622 F.2d 1363 (9th Cir. 1980)...............................................................8

*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ...........................................................................5

*Trainor v. Hernandez*,
   431 U.S. 434 (1977) ..........................................................................10

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) .........................................................................7, 9

*Trump v. Vance*,
   941 F.3d 631 (2d Cir. 2019).................................................... 12, 13, 14

*United States v. California*,
   639 F. Supp. 199 (E.D. Cal. 1986) .......................................................13

*United States v. Composite State Bd. of Med. Examiners*,
   656 F.2d 131 (5th Cir. Unit B Sept. 1981).................................... 13, 14

*United States v. Dicter*,
   198 F.3d 1284 (11th Cir. 1999).............................................................13

*United States v. Minnesota*,
   270 U.S. 181 (1926) ...........................................................................8

iii

*United States v. Missouri*,
   114 F.4th 980 (8th Cir. 2024)......................................................8

*United States v. Morros*,
   268 F.3d 695 (9th Cir. 2001)............................................. 12, 13

*United States v. Ohio*,
   614 F.2d 101 (6th Cir. 1979)....................................................13

*United States v. Oregon*,
   No. 10-528-HA, 2011 WL 11426 (D. Or. Jan. 4, 2011) ......................13

*United States v. Pa. Dep't of Envtl. Res.*,
   923 F.2d 1071 (3d Cir. 1991)...................................................12

*United States v. Rural Elec. Convenience Coop. Co.*,
   922 F.2d 429 (7th Cir. 1991)..............................................10, 11

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
   412 U.S. 669 (1973) .................................................................7

*United States v. Texas*,
   557 F. Supp. 3d 810 (W.D. Tex. 2021) ......................................8

*United States v. Texas*,
   719 F. Supp. 3d 640 (W.D. Tex. 2024) ......................................4

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ...............................................................10

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................... 3, 5, 6

*Woodfeathers, Inc. v. Washington County*,
   180 F.3d 1017 (9th Cir. 1999)..........................................14, 15

*Yelp Inc. v. Paxton*,
   137 F.4th 944 (9th Cir. 2025) .................................................12

*Younger v. Harris*,
   401 U.S. 37 (1971) ....................................................... *passim*

iv

**Other Authorities**

Brief of Massachusetts et al. as Amici Curiae, *Whole Woman's Health v. Jackson*,
No. 21-463, 2021 WL 5016707 (S. Ct. Oct. 27, 2021) ..........................................8

Economists Amicus Br., ECF No. 81, in *United States v. Vermont*, No. 2:24-cv-
01513-mkl (D. Vt.) ................................................................................................6

FTC Secures Historic $2.5 Billion Settlement Against Amazon,
https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-secures-
historic-25-billion-settlement-against-amazon (last visited October 15, 2025).....6

## REPLY IN SUPPORT OF MOTION

The United States does not have standing. Any harm to its purported interests is entirely remote and speculative—a fatal defect that the United States cannot plead its way around. And as its failure to cite a single analogous case from the country's long history demonstrates, the United States lacks an equitable cause of action. *Younger* abstention also applies, and none of the narrow exceptions to that doctrine are appropriate here.

Taken together, the United States' arguments paint a picture of breathtaking federal power. If everything in its Opposition is correct, then anytime the defendant in a state court lawsuit *might* have a federal defense, or anytime a state lawsuit *could theoretically* increase the cost of any good purchased by Americans or cause the federal government to lose a single dollar, the United States has standing and a cause of action to enjoin the state proceeding in federal court, and that court may not abstain from deciding the case. This legal regime would place countless state cases under mandatory federal supervision, inverting the Constitution's division of power between the local and national governments.

A state court defendant raising federal defenses to state law claims is a "textbook example" of "federalism at work." Opp'n at 1. This extraordinary lawsuit is not. It should be dismissed.

1

### A.    The United States lacks standing.

When the United States filed its Complaint, it imagined the contours of Hawaii's yet-to-be-filed State Action complaint. Those prognostications proved incorrect. The State does not seek to impose strict (or any other) liability on fossil fuel companies for their lawful production and sale of fossil fuels, nor for any entity's lawful emissions. State Action Compl. ¶ 20. Instead, the State's suit targets the State Action Defendants' "tortious and deceptive conduct" in marketing their products. *Id.* ¶ 15. And the State seeks compensation only to the extent the State Action Defendants' failures to warn and unlawful deception increased the climate impacts that their marketing concealed and minimized. *See id.* ¶¶ 327–448. As the Hawaiʻi Supreme Court explained, such a "lawsuit does not seek to regulate emissions or curb energy production[.]" *City & Cty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1193 (Haw. 2023), *cert. denied*, 145 S. Ct. 1111 (2025).[1] By ignoring the State Action complaint Hawaiʻi filed in favor of the complaint the United States imagined, the United States builds its standing theory on a chain of contingencies whose very first

---

[1]    The United States' heavy reliance on *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), is misplaced. Unlike New York City's state law claims, which sought to "impose strict liability" for fossil fuel companies' "lawful . . . commercial activit[y]," *id.* at 87, 93, the State's suit only seeks relief for the State Action Defendants' tortious marketing conduct. "Nothing in [the State's] lawsuit incentivizes—much less compels—Defendants to curb their fossil fuel production or greenhouse gas emissions." *Honolulu*, 537 P.3d at 1201. Instead, the State Action Defendants can avoid any ongoing liability by simply "issuing warnings and refraining from deceptive conduct[.]" *Id.* at 1207.

link is flawed. And without that first link—the mischaracterization of the State Action complaint—the United States' standing theories collapse.

Even leaving that fundamental problem aside, the United States lacks standing because it fails to articulate an injury to its sovereign, parens patriae, or proprietary interests that is concrete, actual or imminent, and fairly traceable to the State filing and litigating the State Action. Any injury the United States might suffer to those interests is entirely contingent on the outcome of the State Action. And harm that is based on the unpredictable outcome of a separate lawsuit, in a different court, to which the United States is not a party, at a minimum, cannot meet the injury-in-fact requirements of standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990). As a result, this case should be dismissed.

The United States "has the burden of alleging specific facts sufficient to satisfy" the three elements of standing, *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002), but here, the only non-conclusory articulation of an injury to its sovereign interests the United States offers is that a significant damages award in the State Action would essentially regulate the State Action Defendants' behavior and intrude on the United States' exclusive authority to regulate interstate pollution. Opp'n at 7. But "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in [a] case." *Whitmore*, 495 U.S. at 159–60. The United States cannot establish a "real and

3

immediate" injury to its sovereign interest because any such injury is entirely contingent on the outcome of the State Action. *Id.* at 160 (cleaned up).[2]

The United States attempts to analogize this suit to lawsuits it has brought to enjoin the enforcement of unconstitutional state laws. Opp'n at 8–9. But there is a clear distinction between a common law tort suit and an unconstitutional state statute. Since a state statute defines proscribed activities and governs conduct immediately after it becomes effective, it can cause immediate harm. With a common law tort suit, a party will not be held liable until they have the opportunity to present and argue their defenses, and the potential impact is entirely dependent on the outcome of the lawsuit. *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) ("[R]egulation can be effectively exerted through *an award* of damages,

---

[2]    The United States says it suffers "per se irreparable harm" as result of "the very *attempt*, let alone the *existence*, of the State Action[,]" Opp'n at 10, but it mischaracterizes the single district court case it relies on for that proposition. In *United States v. Texas*, 719 F. Supp. 3d 640 (W.D. Tex. 2024), the court did not find that initiating a lawsuit that the United States believes interferes with its authority inflicts "per se irreparable harm" for standing purposes, but rather that if the United States establishes a likelihood that a state law violates the Supremacy Clause because it is expressly preempted, then "irreparable harm is presumed" for purposes of the preliminary injunction standard. *Id.* at 695. The United States therefore stretches *Texas* beyond what it fairly supports. The United States also simply declares, without any real explanation, that the existence of the State Action causes it an "actual, imminent, and concrete" injury, Opp'n at 11, and nowhere grapples with the startling breadth of its position that the mere "*attempt*" by a party to present state law claims to a state court causes the United States an injury that allows it to go to federal court—rather than, for example, seeking to intervene in the state lawsuit—to stop that lawsuit from even proceeding.

and the *obligation to pay* compensation can be . . . a potent method of governing conduct[.]" (cleaned up) (emphases added)). The United States therefore gains no ground by relying on cases involving state statutes. And notably, the United States does not cite to *a single case* where a federal court found the United States had standing to enjoin a *lawsuit* in state court that it was not a party to.

The United States' asserted injury to its proprietary interest is also entirely contingent on the State being awarded significant damages in the State Action. Opp'n at 15–16. This alleged injury fails to establish standing not because it is a future injury, *see id.* at 16, but because it is a speculative future injury, and "[a]llegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158.[3]

The United States next argues that it has standing to sue as parens patriae to protect the general welfare of its citizens, which it alleges will be injured by a

---

[3]     Nor does the United States make any effort to square its argument that "there is a 'substantial risk that the harm will occur[,]'" Opp'n at 16 (cleaned up), with its repeated assertions that the State Action claims are "clearly preempted[,]" *id.* at 24; *see also id.* at 5, 7, 17. If the United States doubts the ability of state courts to adjudicate federal defenses, that runs right up against U.S. Supreme Court precedent expressly recognizing the contrary proposition. *See, e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975) ("Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.").

potential increase in energy prices if the State is awarded significant damages in the State Action. Opp'n at 12–15. But even if a significant damages award in the State Action would lead to increased energy prices for Americans,[4] this injury is contingent on the outcome of the State Action and therefore too remote and speculative to establish standing. *See Whitmore*, 495 U.S. at 159–60. For the same reason, any alleged injury to the United States' parens patriae interest is also not ripe for adjudication because it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (cleaned up).

The United States' extraordinarily broad articulation of parens patriae standing would essentially allow it to sue to enjoin any lawsuit in state court that seeks damages against a company for violating state law if the company could potentially pass the cost of damages on to consumers. The United States recently settled a case against Amazon for deceptive practices.[5] Under its capacious theory

---

[4] This bald allegation is fatally flawed and unsupported by any purported "basic economic principles[.]" Opp'n at 14. Fuel prices are dictated by a global marketplace of supply and demand, and the damages the State seeks constitute fixed costs for past conduct that would not prospectively increase any fossil fuel company's costs of production. *See* Economists Amicus Br., ECF No. 81, in *United States v. Vermont*, No. 2:24-cv-01513-mkl (D. Vt.) (explaining how fossil fuel producers maximize profits and how damages for past conduct would not affect pricing of fossil fuels).

[5] *See* FTC Secures Historic $2.5 Billion Settlement Against Amazon, https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-secures-historic-25-billion-settlement-against-amazon (last visited October 15, 2025).

of parens patriae standing, if the State brought similar state law claims in state court, the United States could sue in federal court to enjoin that lawsuit because American consumers may have to pay more for Amazon Prime. Existing law does not support such a limitless standing doctrine.

The United States must demonstrate that it is injured by the adjudication of the State Action or else the "judicial process" becomes "no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973). Since the United States has failed to do so, the complaint should be dismissed.

**B.     The United States lacks an equitable cause of action.**

A federal court may grant "*only* those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception." *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (emphasis added) (cleaned up). A party suing in equity must show that the requested relief is "sufficiently analogous" to relief available in the English Court of Chancery at the time of the Constitution's adoption. *Id.* at 841–42 (cleaned up).

Despite claiming that this case is a "textbook example of dual federalism at work[,]" Opp'n at 1, the United States cannot cite to a single case where "sufficiently analogous" relief was awarded. In seeking to preemptively bar a State from litigating

7

state law tort claims that seek damages from private parties for past conduct, the United States is not seeking to enjoin the enforcement of allegedly unconstitutional or preempted provisions of state law. *See, e.g.*, *Scott v. Donald*, 165 U.S. 107 (1897); *Arizona v. United States*, 567 U.S. 387 (2012); *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024); *United States v. Texas*, 557 F. Supp. 3d 810 (W.D. Tex. 2021) (relating to an executive order).[6] Nor does this suit involve a request to enjoin a public nuisance or a loss of property to the United States. *See, e.g.*, *In re Debs*, 158 U.S. 564 (1895) (vindicating the federal government's property interest in interstate mail); *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405 (1925) (enjoining the obstruction of navigable waters of the United States); *United States v. Minnesota*, 270 U.S. 181 (1926) (canceling the issuance of land patents); *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957) (enjoining a petitioner from claiming title to federal mineral rights); *SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) (affirming district court's authority to control property placed in receivership).

And this suit bears no resemblance to the cause of action in *Island Airlines, Inc. v. Civil Aeronautics Bd.*, where the federal government enjoined a private airline from operating over the high seas without necessary federal authorization. 352 F.2d

---

[6]    Similarly, the amicus brief in *Whole Woman's Health v. Jackson*, No. 21-463, argued that a federal district court could enjoin the enforcement of a state statute designed to deprive numerous individuals of personal constitutional rights in a manner that evaded judicial review. 2021 WL 5016707, at *6 (S. Ct. Oct. 27, 2021).

735 (9th Cir. 1965). Critically, the United States does not dispute that this case does not resemble *Ex parte Young*, which recognized a cause of action for an anti-suit injunction available only to potential *defendants* who would be sued in state court, not third parties. That concession, coupled with the United States' failure to identify a "comparable predecessor" to or a "historical pedigree" for the remedy it seeks, dooms its claim. *CASA*, 606 U.S. at 847.

Unable to identify any relevant historical example, the United States relies on out-of-context quotations to assert that it may seek equitable relief whenever a state lawsuit for damages against a third party implicates federal interests and legal remedies are allegedly unavailable. Opp'n at 17, 20–21. But the Supreme Court has explicitly rejected an "expansive view of equity" that "asserts a general power to grant relief whenever legal remedies are not 'practical and efficient[.]'" *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999). "To accord a type of relief that has never been available before—and especially (as here) a type of relief that has been specifically disclaimed by longstanding judicial precedent—is to invoke a 'default rule,' not of flexibility but of omnipotence." *Id.* at 322 (citation omitted).

Here, enjoining the State Action merely because the United States alleges that it would have downstream effects on the fossil fuel industry that would in turn, have some effect on federal interests, would not only "accord a type of relief that has

never been available before[,]" *id.*, but would fly in the face of well-established equitable limitations that the United States concedes apply, Mot. at 15–18; Opp'n at 19–20. The United States does not deny the longstanding historical rule that federal courts are loath to intervene in state court proceedings. And contrary to the United States' unsupported contention, Opp'n at 19–20, federalism concerns do not evaporate merely because the United States filed its lawsuit one day before the State. *Trainor v. Hernandez*, 431 U.S. 434, 440–41 (1977) (noting same "basic concerns of federalism" that limit "proper role of a federal court" arise whether litigation "is or apparently soon will be pending in a state court").

Nor does the United States show that it lacks an adequate remedy at law in the state proceedings to protect its purported interests. Opp'n at 20–21. As the party attempting to invoke this court's equitable jurisdiction, it is the United States' burden to allege facts showing it lacks a legal remedy. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). That the United States has not even attempted to intervene in the State Action (nor pleaded any facts seeking to excuse that failure) shows that it *cannot* demonstrate that an injunction is necessary.[7] *United States v. Rural Elec. Convenience Coop. Co.*, 922

---

[7]    The United States' cryptic reference to "affirmative claims" that fall outside the scope of the State Action, Opp'n at 21, is not supported by the claims it has

F.2d 429, 433–34 & n.6 (7th Cir. 1991) (unless the United States first attempted to intervene in a state court proceeding and was rebuffed, court could not say that it lacked an adequate remedy at law). In addition to the possibility of intervention, the United States has not explained why its interests cannot be vindicated in the State Action when the State Action Defendants can and will make the exact same federal law arguments the United States would raise here. The party raising these arguments is of no moment; as noted, the state court is fully capable of resolving these arguments on their merits and vindicating any purported interest of the United States.

## C. *Younger* abstention applies.

"The Supreme Court has repeated 'time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.'" *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 769 (9th Cir. 2025) (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971)). This suit spurns that directive, threatening "the bedrock principle of comity" on which "[o]ur state and federal court systems operate[.]" *Id.*

The United States does not dispute that it seeks to enjoin an ongoing, quasi-criminal state enforcement action in which the State Action Defendants could raise the same federal preemption arguments the United States makes before this Court.

---

pleaded, each of which reframes a federal law defense that can be raised in the State Action.

*See Yelp Inc. v. Paxton*, 137 F.4th 944, 950–51 (9th Cir. 2025). Instead, it raises narrow exceptions to *Younger* that are inapplicable to this case.

First, the United States overreads *Morros*. The Ninth Circuit did not announce a hard-and-fast rule that *Younger* is inapplicable in any case where the United States is the federal plaintiff. Rather, it explained why "a doctrine that aims to avoid federal-state conflict" did not apply "in situations like that at issue" in *Morros*, where conflict between the United States and Nevada had already "been raging for over ten years" before the federal government sought an injunction. *United States v. Morros*, 268 F.3d 695, 708 (9th Cir. 2001). It described that conflict at length and forecast that further conflict was "inevitable" and "impossible to avoid[.]" *Id.* Those details and predictions would have been irrelevant if there was an absolute prohibition on applying *Younger* to the United States. Indeed, the dissenting judge, who thought abstention was warranted because all the *Younger* preconditions were met, understood the majority to disagree because of the "history of conflict and friction between state and federal government[.]" *Id.* at 712 (Hug, J., dissenting).

The other cases cited or referred to by the United States similarly involved instances "when state and federal actors [were] already engaged in litigation." *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019); *see id.* at 635–36 (action to enjoin a New York subpoena of the president's tax returns); *United States v. Pa. Dep't of Envtl. Res.*, 923 F.2d 1071, 1072–73 (3d Cir. 1991) (action to enjoin Pennsylvania from

12

enforcing an order that the United States clean up a Navy site); *United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131, 132–34 (5th Cir. Unit B Sept. 1981) (action to enjoin Georgia from suspending the medical license of a National Health Service Corps physician).[8] In such cases, federal-state conflict is unavoidable, and the only issue is determining "the proper forum for resolution of the conflict." *Morros*, 268 F.3d at 708. Otherwise, courts have held that "[a]bstention from exercise of federal jurisdiction is not improper simply because the United States is the party seeking a federal forum." *United States v. Ohio*, 614 F.2d 101, 104 (6th Cir. 1979); *see United States v. Oregon*, No. 10-528-HA, 2011 WL 11426, at *5 (D. Or. Jan. 4, 2011), *aff'd*, 503 F. App'x 525 (9th Cir. 2013); *United States v. California*, 639 F. Supp. 199, 206 (E.D. Cal. 1986).

"Comity is a two-way street[.]" *Trump*, 941 F.3d at 638 (cleaned up). When "*Younger*'s policy of comity can[not] be vindicated" because a state has already haled the United States into court, the balance of interests may "tip[] in favor of exercising [federal] jurisdiction." *Id.* But when, as in this case, there is no preexisting federal-state conflict and the state proceeding does not involve a "federal actor[,]"

---

[8]    The Eleventh Circuit case, *United States v. Dicter*, involved a criminal defendant who argued that the district court should have abstained from ordering him to forfeit his medical license due to an ongoing investigation by state licensing officials. 198 F.3d 1284, 1291 (11th Cir. 1999). Although it cited *Composite*, the Eleventh Circuit's holding was that *Younger* did not apply because no one had asked a federal court for equitable relief against a state court proceeding. *Id.*

*id.* at 637, abstention is necessary to demonstrate "proper respect for state functions," *Composite*, 656 F.2d at 136 (quoting *Younger*, 401 U.S. at 44).

Second, the United States disputes that its interests are sufficiently intertwined with those of the State Action Defendants. *See Herrera v. City of Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019). Its argument consists of a single, conclusory statement that its "sovereign and parens patriae interests . . . do not overlap with the interests of the State Action [D]efendants." Opp'n at 24. To the extent such interests are even at stake, they are clearly intertwined with the State Action Defendants' interests. The United States claims that the State is injuring federal sovereignty and harming the economic well-being of the American people merely by *litigating its case against the State Action Defendants. Id.* at 9–15. Its interests therefore necessarily "overlap with[,]" *id.* at 24, and are "closely related" to the State Action Defendants' interests in defending against that same lawsuit, *Herrera*, 918 F.3d at 1047 (cleaned up). Under the United States' own theories, "direct interference with the state court proceeding is inevitable" if its sovereignty and parens patriae interests are to be protected. *Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001).

Third, the United States says the State Action does not implicate an important state interest because the State's claims are preempted by federal law. When deciding whether to abstain under *Younger*, a district court's preemption inquiry is "limited." *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021 (9th Cir. 1999). The

14

question is not "whether [the] state law is preempted" (which would "render *Younger* a nullity") but "whether federal preemption of the state law at issue is readily apparent." *Id.* (cleaned up). Preemption may be "readily apparent" when "the Supreme Court ha[s] previously decided the issue" or when "the state law [falls] under the express preemption clause" of a federal statute. *Id.* It is "not readily apparent" when the case presents a question of first impression, *id.* at 1022, or relies on theories of conflict or field preemption unsupported by binding precedent, *see Rosales v. Ehnes*, No. 10-6495 GAF (FFMx), 2010 WL 11603082, at *3 (C.D. Cal. Oct. 25, 2010).

Here, neither the Supreme Court nor the Ninth Circuit have held that claims like the State's are preempted, *see* Opp'n at 25, no express preemption clause bars the claims, *see* Compl., ECF No. 1, at 12–17 (arguing field and conflict preemption theories), and the Hawai'i Supreme Court has rejected similar preemption theories, *Honolulu*, 537 P.3d at 1195–1207. The United States' citation to a handful of non-controlling cases may raise the preemption question, but "the answer to that question is not so 'readily apparent' as to defeat *Younger* abstention." *Woodfeathers*, 180 F.3d at 1022. It can and should be resolved in state court.

## D.    Conclusion

For the foregoing reasons, the State's motion should be granted.

DATED:  Honolulu, Hawaiʻi, October 22, 2025.


/s/ *Kalikoʻonālani D. Fernandes*
KALIKOʻONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached was served electronically through the Court's CM/ECF system or conventionally by mailing copies via U.S. Mail, postage prepaid, upon the following:

ADAM R.F. GUSTAFSON
ROBERT N. STANDER
JUSTIN D. HEMINGER
JAMES R. MacAYEAL
United States Department of Justice
Environment and Natural Resources Division
Post Office Box 7415
Washington, D.C. 20044

Attorneys for Plaintiff

DATED:  Honolulu, Hawaiʻi, October 22, 2025.


/s/ *Kalikoʻonālani D. Fernandes*
KALIKOʻONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants

1