ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7415
Washington, D.C. 20044
Telephone: (202) 598-5396
Email: justin.heminger@usdoj.gov

Attorneys for Plaintiff United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:25-cv-00179-HG-WRP |
| *Plaintiff*, | **PLAINTIFF UNITED STATES' BRIEF RESPONDING TO THE COURT'S QUESTIONS IN THE FEBRUARY 11, 2026 MINUTE ORDER (ECF 39)** |
| v. | |
| STATE OF HAWAII; JOSHUA BOOTH GREEN, Governor of Hawaii, in his official capacity; and ANNE E. LOPEZ, in her official capacity as Hawaii Attorney General, | Judge: Hon. Helen Gillmor |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .................................................................................1

    1.    The United States need not seek leave to amend its Complaint because the allegations fully support its claims. ...........................................................................1

    2.    *City & County of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023) is irrelevant to Hawaii's Motion. ..........................................................................5

    3.    The United States need not seek to intervene in the State Action. ...................................................................7

    4.    The United States has an equitable action against Hawaii apart from the All Writs Act and the Declaratory Judgment Act. .......................................10

    5.    The decision in *United States v. Michigan* is distinguishable and does not support dismissal. .......................12

CONCLUSION ...................................................................................17

CERTIFICATE OF COMPLIANCE .......................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Alabama v. California*,
604 U.S. ___, No. 158, Orig. (Dec. 10, 2024) ...............................17

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982)........................................................................15

*Arizona v. United States*,
567 U.S. 387 (2012)........................................................................15

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)........................................................................10

*Carroll v. Safford*,
3 How. 441, 11 L. Ed. 671 (1845)..................................................11

*City & County of Honolulu v. Sunoco LP*,
537 P.3d 1173 (Haw. 2023).........................................................5, 6

*City of Charleston v. Brabham Oil Co., Inc.*,
2025 WL 2269770 (S.C. Ct. Com. Pl. Aug. 6, 2025) ...................15

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ...............................................4, 5, 6, 14

*Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*,
265 F. Supp. 3d 179 (D. Conn. 2017) ...........................................16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)..........................................................................6

*Federal Election Comm'n v. Cruz*,
596 U.S. 289 (2022)........................................................................13

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987)........................................................................14

*Leiter Mins., Inc. v. United States,*
    352 U.S. 220 (1957)...............................................................................11

*Mayor & City Council of Baltimore v. BP P.L.C.,*
    2024 WL 3678699 (Md. Cir. Ct. July 10, 2024) ...........................................6

*New York by James v. Pa. Higher Educ. Assistance Agency,*
    2020 WL 2097640 (S.D.N.Y. May 1, 2020) ..................................................16

*Pueblo Entero (LUPE) v. Abbott,*
    604 F. Supp. 3d 512 (W.D. Tex. 2022) .........................................................16

*SEC v. Wencke,*
    622 F.2d 1363 (9th Cir. 1980) ...............................................................10, 11

*Stauffer v. Brooks Bros., Inc.,*
    619 F.3d 1321 (Fed. Cir. 2010) ...................................................................16

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998)........................................................................................14

*Suncor Energy (U.S.A.) Inc. v. County Comm'rs of Boulder Cnty.,*
    2026 WL 490537 (S. Ct. Feb. 23, 2026) ........................................................6

*Syverson v. IBM Corp.,*
    472 F.3d 1072 (9th Cir. 2007) .......................................................................7

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,*
    322 F.3d 1064 (9th Cir. 2003) .......................................................................7

*Town of Carrboro v. Duke Energy Corp.,*
    2026 WL 411466 (N.C. Super. Ct. Feb. 12, 2026) .........................................5

*United States v. California,*
    2020 WL 8183945 (E.D. Cal. Feb. 26, 2020) ...............................................16

*United States v. Idaho,*
    623 F. Supp. 3d 1096 (D. Idaho 2022) .........................................................16

*United States v. Michigan,*
    635 F. Supp. 944 (W.D. Mich. 1985)..............................................................7

*United States v. Michigan*,
  --- F. Supp.3d ---, 2026 WL 194031 (W.D. Mich. Jan. 24, 2026) .......... 12-17

*United States v. Morros*,
  268 F.3d 695 (9th Cir. 2001) ........................................................................10

*United States v. Rural Elec. Convenience Coop Co.*,
  922 F.2d 429 (7th Cir. 1991) ..........................................................................8

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)..............................................................................15, 16

## Statutes

15 U.S.C. § 1 .........................................................................................................13

15 U.S.C. § 15 .......................................................................................................13

15 U.S.C. § 26 .......................................................................................................13

28 U.S.C. § 1331 .....................................................................................................8

28 U.S.C. § 1651 ...................................................................................................11

28 U.S.C. § 2283 ...................................................................................................11

Mich. Comp. Laws § 445.772.............................................................................13

## Other Authorities

Wright, Miller & Cooper, 5B Fed. Prac.& Proc. Civ. § 1350 n.37 (4th
  ed.) .................................................................................................................14

Brief for the United States as Amicus Curiae Supporting Petitioners,
  *Suncor Energy (U.S.A.) Inc. v. Cnty. Comm'ns of Boulder
  Cnty.,* 2025 WL 2664306 (S. Ct. Sept. 11, 2025) .........................................19

## INTRODUCTION

The United States appreciates the opportunity to address the Court's five supplemental questions on Hawaii's Rule 12(c) Motion for Judgment on the Pleadings. *See* Minute Order, ECF 39 (Feb. 11, 2026). For the reasons discussed below and in the United States' Memorandum in Opposition to the Motion (ECF 29), the Court should deny Hawaii's Motion.

### 1.    The United States need not seek leave to amend its Complaint because the allegations fully support its claims.

No amendment to the United States' Complaint is necessary to respond to Hawaii's standing argument. As the United States explained in its Memorandum in Opposition ("U.S. Opp."), the Complaint alleges present and imminent injuries that Hawaii's State Action causes to the United States' sovereign, parens patriae, and proprietary interests. In its Reply (ECF 30 at 2–3), Hawaii sought to inject a new argument about the Complaint that is flawed for three reasons.[1]

*First*, Hawaii's argument—that its State Action asserts state law claims that are neither preempted nor precluded—is a *merits* issue for the Court to decide down the road, not a threshold question of the United States' standing to sue Hawaii. As the United States explained in its Opposition, when evaluating standing, the Court must assume the merits of the United States' claims when deciding whether the

---

[1] Though Hawaii discussed this issue briefly in the Background of its Motion (at 4-5), it raised no argument about it until the Reply. Thus, the United States had no prior opportunity to address the issue.

United State has adequately alleged an Article III injury from Hawaii's conduct. U.S. Opp. at 6 (citing cases). Hawaii asks the Court to do the opposite—to prematurely decide, based on one paragraph of argument in its Reply, whether Hawaii's state law claims run afoul of the Clean Air Act and the Constitution.

To be sure, Hawaii *could* have chosen to brief the merits in its Motion. It did not. And when counsel for the United States proposed to brief the merits along with Hawaii's other arguments, Hawaii opposed that proposal. Having made its strategic choice, Hawaii is confined to the three threshold issues it chose to raise.

*Second*, Hawaii's argument disregards the standard of review. At the pleadings stage, the Court must accept the allegations in the Complaint as true and construe them in the light most favorable to the United States. *See* U.S. Opp. at 6. To that end, the United States accurately alleged that Hawaii planned to file its State Action, which Hawaii did the following day, May 1, 2025. Compl. ¶ 4. And the United States accurately predicted that Hawaii's lawsuit would seek damages for alleged climate change harms and would "seek[] to hold fossil fuel companies liable for purported contributions to greenhouse gas emissions." *Id*. ¶¶ 4, 14. And the United States alleged why the State Action caused immediate and imminent injuries to the United States. *Id*. ¶ 7. The United States met its burden to present standing allegations, which is all the Court should address at this juncture. Given the standard of review, the Complaint clearly passes the low bar for notice pleading.

*Third*, though the merits are not presently before the Court, Hawaii's merits argument is wrong both factually and legally. As a factual matter, Hawaii's State Action is all about greenhouse gas emissions. The phrase "GHG emissions" appears 30 times in the State Action Complaint, and "Climate-Related Harms" appears 48 times. Hawaii contends that its State Action "does not seek to impose strict (or any other) liability on fossil fuel companies for their lawful production and sale of fossil fuels, nor for any entity's lawful emissions." *See* Reply 2 (citing State Action Compl. ¶ 20). But the cited paragraph in the State Action Complaint makes an entirely different point: "The State does not seek to impose liability on Defendants for their *direct emissions* of [greenhouse gases] and does not seek to restrain Defendants from engaging in their lawful business." State Action Compl. ¶ 20 (emphases removed and added). Neither of those points is relevant to the United States' claims. And contrary to Hawaii's contention, it *does* seek to hold fossil fuel companies liable for harms allegedly caused by greenhouse gas emissions from burning the fossil fuels that the companies produced and sold.

The true nature of Hawaii's State Action is apparent from the very first allegations in its Complaint, which begins, "The fossil fuel industry has known for decades . . . that fossil fuels produce carbon dioxide ('$CO_2$') and other greenhouse gas ('GHG') pollution that can have catastrophic consequences for the planet and its

people." State Action Compl. ¶ 1. And in the first count of the State Action Complaint for negligence, Hawaii alleges that the companies "are responsible for causing and accelerating climate change" and that "[f]ossil fuel products release GHGs into the atmosphere, causing the harms in Hawai'i alleged in Section V.I." *Id*. ¶ 328. To give just one more example, Hawaii artfully alleges that Defendants promoted, advertised, sold, and/or distributed fossil fuel products that caused a private nuisance of "Climate-Related Harms." *Id*. ¶ 357.

Hawaii seeks to hold fossil fuel companies liable for producing and selling fossil fuels *because* those fuels generated greenhouse gas emissions that Hawaii alleges harmed the State. Any suggestion to the contrary boils down a fruitless attempt to evade the Clean Air Act and the Constitution. But "[a]rtful pleading cannot transform [the state's] complaint into anything other than a suit over global greenhouse emissions." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021). Even Hawaii's Governor Joshua Green candidly acknowledged what the State Action was all about: "We will be filing suit, I believe, on Thursday against the fossil fuel companies. They have to pay their share because *climate change and the climate impact* is definitely connected to generations of extra fossil fuel *that's been burned*." Compl. ¶ 4 (emphasis added).

Legally, Hawaii's state law claims are preempted and precluded. This conclusion is supported by the only federal court of appeals decision to have reached the

question, *City of New York*, 993 F.3d 81, and a growing chorus of other federal and state courts. *See* U.S. Opp. 25-26 (citing cases).[2] And as noted in Section 2 below, the Supreme Court has now granted certiorari to review a Colorado Supreme Court decision that also split from *City of New York*. But again, this question should be resolved by the Court at the merits stage.

## 2. *City & County of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023) is irrelevant to Hawaii's Motion.

Though Hawaii cited *City & County of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023) multiple times, the decision is irrelevant to Hawaii's pending Motion because it concerns the merits of the United States' claims, not the threshold issues that Hawaii chose to raise. As noted in response to Question 1 above, the United States welcomes the opportunity to brief the merits of its claims. Those claims raise pure issues of law that the Court can decide on summary judgment. But Hawaii's Motion does not present them for resolution.

When the Court reaches the merits, it will not be bound by *City & County of Honolulu* and should not follow that erroneous decision. In *City & County of Honolulu*, the Hawaii Supreme Court held that the Clean Air Act does *not* preempt state law claims like those Hawaii has pled in the State Action. 537 P.3d at 355-60. In so doing, the Hawaii Supreme Court split from the Second Circuit's decision in *City of*

---

[2] Since the United States filed its Opposition, another court dismissed a climate lawsuit, this one against a utility company. *See Town of Carrboro v. Duke Energy Corp.*, 2026 WL 411466 (N.C. Super. Ct. Feb. 12, 2026).

*New York. Compare City & Cnty. of Honolulu*, 537 P.3d at 355-60, *with City of New York*, 993 F.3d at 98-100. As a more recent state trial court decision explained, *City & County of Honolulu* is erroneous because it failed to properly acknowledge the true nature of the state law claims asserted against energy companies. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 2024 WL 3678699, at *4-7 (Md. Cir. Ct. July 10, 2024).[3]

None of the doctrines referenced in the Minute Order applies. The *Rooker-Feldman* doctrine does not apply because it is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). This case is worlds apart from the narrow concern the Supreme Court addressed in *Rooker-Feldman*. Here, the United States is not a state court loser; it is

---

[3] More recently still, on February 23, 2026, the Supreme Court granted the petition for certiorari in *Suncor Energy (U.S.A.), Inc. v. County Commissioners of Boulder County*, No. 25-170 (S. Ct.). *See Suncor Energy (U.S.A.), Inc. v. County Comm'rs of Boulder Cnty.*, 2026 WL 490537 (S. Ct. Feb. 23, 2026). The petition presents the following question: "Whether federal law precludes state-law claims seeking relief for injuries allegedly caused by the effects of interstate and international greenhouse-gas emissions on the global climate." The Supreme Court also directed the parties to brief Article III and subject-matter jurisdiction.

pursuing its own federal law claims to remedy injuries to the United States' own interests. That makes this a quintessential case for this Court to resolve.

Nor do claim preclusion or issue preclusion (res judicata) apply. Both doctrines generally require the same parties or privity between the parties, but neither the United States nor Hawaii is a party to the *City & County of Honolulu* case. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (elements of claim preclusion); *Syverson v. IBM Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (recognizing that offensive nonmutual issue preclusion is appropriate only if "(4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action").

### 3. The United States need not seek to intervene in the State Action.

The United States sued in federal court to vindicate its federal interests in the supremacy of federal law. "The United States' right to bring such [an] action[] in the district court[] as sovereign to protect its interests and policies is well established." *United States v. Michigan*, 635 F. Supp. 944, 946 (W.D. Mich. 1985), *aff'd*, 851 F.2d 803 (6th Cir. 1988). The United States thus does *not* intend to seek to intervene in the State Action. Contrary to Hawaii's argument (Mot. 23-24), seeking to intervene in the State Action is *not* a prerequisite to this Court's exercise of equitable authority. A ruling to the contrary would flip the Supremacy Clause on its head.

As the federal sovereign, the United States has a clear right to access its own federal courts to seek relief to redress injuries to the United States. In this case, the United States has asserted federal claims under a federal statute and the United States Constitution. Not only do those claims implicate this Court's federal question jurisdiction, 28 U.S.C. § 1331, but Congress separately granted this Court original subject-matter jurisdiction over "all civil actions . . . commenced by the United States." *Id*. § 1345. Requiring the United States to first attempt to present its federal law claims to a state court for resolution would upend the jurisdictional framework established by Congress.

The United States' right to resort to federal court also explains why Hawaii has misplaced reliance on *United States v. Rural Electric Convenience Coop Co.*, 922 F.2d 429 (7th Cir. 1991). Unlike in that case, the United States' position here is that Hawaii's State Action is itself the unlawful action that should be enjoined by this Court. By contrast, *Rural Electric* involved the United States' security interest in a wholesale power contract between two rural electric cooperatives. *Id.* at 430.

In that context, the Seventh Circuit rejected the United States' argument that the state court suit over that contract was effectively a "suit against the United States" and that the suit therefore implicated the sovereign immunity doctrine. *Id.* at 434-36. And the Seventh Circuit held that the district court had to determine whether the United States was able to intervene in the state court suit, or whether it was a

8

"real, substantial party in interest" in the litigation, in which case the sovereign immunity bar was triggered. *Id.* at 436-37. Here, by contrast, the United States has its own federal claims as plaintiff to pursue against Hawaii.

Nor has Hawaii explained how the United States could intervene in the State Action. Indeed, though Hawaii insists that the United States must *attempt* to intervene, Hawaii has reserved the right to *oppose* the United States' intervention. Mot. 16 n.10. Nor has Hawaii explained how, as a procedural matter, the United States could intervene to assert its federal claims. The United States would not be a defendant because Hawaii is not asserting any claims directly against the United States, and the United States would have sovereign immunity as to Hawaii's claims, as the Seventh Circuit discussed in *Rural Electric*.

It is equally uncertain whether the United States could successfully seek in the State Action the equitable relief sought here. For instance, it is unclear whether that relief—a permanent injunction prohibiting Hawaii from pursuing its state law claims—would be available in state court. Though state courts are equally capable of resolving questions of federal law, they do not necessarily possess the same equitable powers that federal courts have to enjoin state actors from taking unconstitutional actions.

At the end of the day, the only realistic avenue suggested by Hawaii (Mot. 16) would be for the United States to seek leave to file an amicus brief in the State Action. But that is an inadequate legal remedy because it prevents the United States from pursuing its own federal law claims against Hawaii.

Finally, if Hawaii were correct that the United States must seek intervention in a state court action before seeking a federal-court injunction, then the Ninth Circuit's clear exceptions to the Anti-Injunction Act and *Younger* abstention, which allow the United States to seek injunctions of state court proceedings, would make little sense. *See SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980) (holding that the Anti-Injunction Act does not apply to the United States); *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001) (holding that *Younger* abstention does not apply to the United States).

### 4. The United States has an equitable action against Hawaii apart from the All Writs Act and the Declaratory Judgment Act.

The United States has an equitable action that does not depend on either the All Writs Act or the Declaratory Judgment Act. U.S. Opp. 17-22. And this Court has power to grant equitable relief to enjoin Hawaii's unconstitutional acts. *Id*. This equitable authority derives from the traditional equitable power of Article III courts. The Supreme Court has explained this power by reference to a deep historical tradi-

10

tion: "The ability to sue to enjoin unconstitutional actions by state and federal offic-ers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). "What [the Supreme Court's] cases demonstrate is that, 'in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer." *Id*. (quoting *Carroll v. Safford*, 3 How. 441, 463, 11 L. Ed. 671 (1845)).

That said, the All Writs Act and Declaratory Judgment Act may still be rele-vant to the United States' suit. The All Writs Act, 28 U.S.C. § 1651(a) empowers district courts to issue all writs (injunctions) "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Though the Anti-Injunction Act, 28 U.S.C. § 2283, limits a district court's All Writs Act authority, the Anti-Injunction Act does not apply to the United States. *See Leiter Mins., Inc. v. United States*, 352 U.S. 220 (1957); *Wencke*, 622 F.2d at 1368; *see also* Mot. 25 n.15 (conceding that the Anti-Injunction Act does not apply to the United States and preserving the argument that *Wencke* was wrongly decided).

The United States also has sought a declaratory judgment that Hawaii's ac-tions are unconstitutional. The Declaratory Judgment Act supports that separate re-quest for relief. A declaratory judgment from this Court on the United States' claims would inform the parties in any future dispute. For example, if Hawaii were to file

11

another state court action raising *different* claims than the ones in the present State
Action, the declaratory judgment would inform the parties' positions.

### 5.    The decision in *United States v. Michigan* is distinguishable and does not support dismissal.

The decision in *United States v. Michigan*, --- F. Supp.3d ---, 2026 WL
194031 (W.D. Mich. Jan. 24, 2026), provides no support for Hawaii.[4]

For starters, the case is distinguishable. The United States sued Hawaii and
Michigan because both intended to bring state law claims in state courts to regulate
global greenhouse gas emissions in violation of federal law. Only Hawaii followed
through; Michigan abandoned its state action after considering the United States'
lawsuit. Michigan moved to dismiss, arguing "only one" issue: ripeness. Dkt. 11 at
3. Siding with Michigan, the court found the case non-justiciable because—unlike
here—it had no state action to analyze. 2026 WL 194031 at *8-10 (holding lawsuit
not ripe because the allegations turned "on contingent future events that may not
occur as anticipated, or indeed may not occur at all").

And Michigan, unlike Hawaii, backed down from pursuing state law claims
in state court. Michigan is now attempting to pioneer unconventional antitrust theo-
ries in federal court in yet another attempt to regulate climate change. *See People of
the State of Michigan v. BP P.L.C.*, No. 1:26-cv-00254, Dkt. 1 (W.D. Mich. Jan. 23,

---

[4] Docket citations in this section refer *United States v. Michigan* located at No. 1:25-
cv-00496 (W.D. Mich.).

2026) (claiming violations of the Sherman Act, 15 U.S.C. § 1, the Clayton Act, 15 U.S.C. §§ 15, 26, and Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.772).

The Michigan district court also erred in multiple respects. First, the court overlooked binding precedent. Michigan moved to dismiss because "there [were] no specific claims" before the court "to determine whether they [were] preempted or unconstitutional." Dkt. 11 at 1. But the United States' case did not hinge on what exact theories of state liability Michigan may bring because the United States' theory, as here, is that *any* state-law claim that Michigan could assert in state court based on global greenhouse gas emissions would be preempted by federal law. In support, the United States relied upon *Federal Election Commission v. Cruz* in which the Supreme Court held that federal courts must "accept as valid the merits of [the plaintiff's] legal claims . . . [*f*]*or standing purposes.*" 596 U.S. 289, 298 (2022) (emphasis added). In direct contravention of *Cruz*, the Michigan district court rejected the United States' "preemption 'legal theory.'" 2026 WL 194031, at *9. That conclusion is a merits decision not appropriate for assessing the threshold question of the United States' standing. *See above* Section 1.

To reach its result, moreover, the Michigan district court noted "a basic difference between motions to dismiss under Rule 12(b)(6) and Rule 12(b)(1)" for why it could reject the United States' legal theory when assessing standing. *Id.* at *9 n.12.

Setting aside its omission of *Cruz* in raising this distinction, the court failed to explain why this difference mattered. In all events, the sources it cited refute the proposition. *See id.* (citing, among other cases, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), which states that "the absence of a valid (as opposed to arguable) cause of action *does not implicate subject matter jurisdiction*") (emphasis added); Wright, Miller & Cooper, 5B Fed. Prac. & Proc. Civ. § 1350 n.37 (4th ed.)) ("Dismissing a complaint for lack of federal jurisdiction is not appropriate merely because the legal theory contained therein is probably false . . . .") (citation omitted).

The district court went on to claim that the United States had "failed to provide authority establishing that 'any state law claim that Michigan may assert based on global greenhouse gas emissions would be preempted by federal law.'" 2026 WL 194031 at *9 n.12. In fact, the United States cited nearly a dozen cases so holding. *See* Dkt. 19 at 16 n.8. The United States also relied upon *City of New York*, 993 F.3d at 91, in which the Second Circuit held that "[a]rtful pleading [of state-law claims] cannot transform" a climate change "complaint into anything other than a suit over global greenhouse gas emissions."

The Supreme Court recognizes a "slim reservoir" of State authority for "state lawsuits brought under 'the law of the pollution's source state.'" *City of New York*, 993 F.3d at 100 (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496 (1987)

(cleaned up). But lawsuits seeking remedies for global greenhouse gas emissions do not fall within this slim reservoir, as a "growing chorus" of courts have held. *See City of Charleston v. Brabham Oil Co., Inc.*, 2025 WL 2269770, at *2 (S.C. Ct. Com. Pl. Aug. 6, 2025) (collecting cases); *see also* U.S. Opp. 25-26 (citing cases). Instead of engaging with the well-established precedent supporting the United States, the court ignored it. *See id.*

Finally, the district court erred in sua sponte concluding that the United States lacked standing. But the United States suffers injury to its sovereignty when a State usurps federal authority to regulate in an area of exclusive federal control. The United States has cognizable "sovereign interests," not only in its "power to create and enforce a legal code, both civil and criminal," but also in "recognition [of that code] from other sovereigns." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982); *Arizona v. United States*, 567 U.S. 387, 398 (2012) ("Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect.").

The Supreme Court has thus explained: "It is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [U.S.] sovereignty arising from violation of its laws." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). So "[w]hen state governments" act to impugn

the United States' sovereignty, a "personal injury to the United States arises." *La Union del Pueblo Entero (LUPE) v. Abbott*, 604 F. Supp. 3d 512, 527 (W.D. Tex. 2022); *see also id*. at 526 ("Undoubtedly, the United States suffers a concrete harm to its sovereignty when its laws are violated" by a state.).

Courts have repeatedly and uniformly applied this principle to hold that "the United States' sovereign interests are harmed when its laws are violated." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022); *see also, e.g.*, *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1326 (Fed. Cir. 2010) ("From the government's perspective, a harm arises from an 'injury to its sovereignty arising from violation of its laws.'" (quoting *Vermont Agency*, 529 U.S. at 771)); *United States v. California*, 2020 WL 8183945, at *3 (E.D. Cal. Feb. 26, 2020) ("The United States has plausibly alleged its claimed injury—the usurpation of federal authority to conduct foreign affairs."); *New York by James v. Pa. Higher Educ. Assistance Agency*, 2020 WL 2097640, at *11 (S.D.N.Y. May 1, 2020) ("a sovereign is injured by a violation of its law"); *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 192 (D. Conn. 2017) (The United States suffers an "injury to its sovereignty . . . from violation of its laws.").

State court actions that seek to use state law claims to regulate global greenhouse gas emissions injure the United States by violating federal law and usurping

16

exclusive federal authority to regulate interstate commerce and global air pollution.[5]

In short, because *Michigan* is distinguishable and legally flawed, it is unhelpful to this Court's resolution of Hawaii's Motion.

## CONCLUSION

For all these reasons and those in the United States' Opposition (ECF 29), the Court should deny Hawaii's Motion for Judgment on the Pleadings.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

/s/ *Justin D. Heminger*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JUSTIN D. HEMINGER
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
Telephone: (202) 598-5396
Email: justin.heminger@usdoj.gov

February 25, 2026

---

[5] The district court also cited the United States' amicus brief in *Alabama v. California*, 604 U.S. ___, No. 158, Orig. (Dec. 10, 2024), in which the Solicitor General argued that States lack Article III standing to challenge climate change claims in an original action in the Supreme Court. *See* 2026 WL 194031, at *6. No party raised this brief because it involved an original action in the Supreme Court—a procedural posture distinct from filing a complaint in district court. The court also ignored the more recent *Suncor* brief filed by the United States in support of certiorari. *See* Brief for the United States as Amicus Curiae Supporting Petitioners, *Suncor Energy (U.S.A.) Inc. v. County Comm'ns of Boulder Cnty.*, 2025 WL 2664306 (S. Ct. Sept. 11, 2025).

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of LR7.4(b) because, excluding the parts of the document exempted by the rule, this document contains 4,239 words, according to the count of Microsoft Word.

/s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

Counsel for the United States

18