ANNE E. LOPEZ 7609
Attorney General of Hawai‘i
KALIKO‘ONĀLANI 9964
D. FERNANDES
Solicitor General
LAUREN K. CHUN 10196
First Deputy Solicitor General
THOMAS J. HUGHES 11059
CAITLYN B. CARPENTER 11928
Deputy Solicitors General
Department of the Attorney General,
 State of Hawai‘i
425 Queen Street
Honolulu, Hawai‘i 96813
Tel: (808) 586-1360
E-mail: kaliko.d.fernandes@hawaii.gov
 lauren.k.chun@hawaii.gov
 thomas.j.hughes@hawaii.gov
 caitlyn.b.carpenter@hawaii.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:25-cv-00179-HG-WRP |
| Plaintiff, | **DEFENDANTS' RESPONSIVE SUPPLEMENTAL BRIEF; CERTIFICATE OF SERVICE** |
| v. | |
| STATE OF HAWAI‘I; JOSHUA BOOTH GREEN, Governor of Hawai‘i, in his official capacity; and ANNE E. LOPEZ, in her official capacity as Hawai‘i Attorney General, | Judge: Hon. Helen Gillmor |
| Defendants. | |

**TABLE OF CONTENTS**

A. The United States' disavowal of any intent to amend its complaint supports judgment for Defendants. ................................................1

B. *Honolulu v. Sunoco* is relevant to Defendants' arguments, even though the *Rooker-Feldman* doctrine and claim preemption do not apply. ................3

C. To invoke the Court's equitable jurisdiction, the United States must demonstrate that intervention in the State Action would not provide it with an adequate remedy at law. ................................................6

D. Neither the All Writs Act nor the Declaratory Judgment Act provides an equitable cause of action. ................................................13

E. The discussion of standing in *United States v. Michigan* is directly applicable and supports judgment for Defendants. ................................16

F. Conclusion ................................................22

i

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. California*,
145 S. Ct. 757 (2025) (No. 158, Orig.) ...............................................19

*Barranco v. 3D Sys. Corp.*,
952 F.3d 1122 (9th Cir. 2020) ...........................................................6

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ...........................................................................6

*Brown v. Duringer Law Grp. PLC*,
86 F.4th 1251 (9th Cir. 2023) ...........................................................3

*Burnes v. Hawaiian Elec. Co.*,
No. SCAP-25-0000531, 2026 WL 370176 (Haw. Feb. 10, 2026) .............. 8, 9, 10

*Ching v. Case*,
449 P.3d 1146 (Haw. 2019) ..............................................................11

*City & Cty. of Honolulu v. Sunoco LP*,
537 P.3d 1173 (Haw. 2023), *cert. denied*, 145 S. Ct. 1111 (2025) ................ 1, 3, 4

*City & Cty. of Honolulu v. Sunoco LP*,
No. 1CCV-20-0000380 (Haw. Cir. Ct.). ...........................................4, 5

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ...............................................................1

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) (per curiam) .........................................14

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...........................................................................2

*Clinton v. Goldsmith*,
526 U.S. 529 (1999) ..........................................................................14

*County of Kaua'i v. Kala Indus., LLC*,
No. CAAP-19-0000032, 2024 WL 1623668
(Haw. Ct. App. Apr. 15, 2024) ..........................................................8

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469 (1962) ................................................................6

*De Beers Consol. Mines, Ltd. v. United States*,
   325 U.S. 212 (1945) ..............................................................15

*Doe v. Immigration & Naturalization Serv.*,
   120 F.3d 200 (9th Cir. 1997).................................................14

*Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*,
   265 F. Supp. 3d 179 (D. Conn. 2017)....................................20

*FDA. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ...........................................................2, 18

*Gila River Indian Cmty. v. Schoubroek*,
   145 F.4th 1058 (9th Cir. 2025) ...............................................4

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ..............................................................15

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ..............................................7, 8

*HawaiiUSA Fed. Credit Union v. Monalim*,
   464 P.3d 821 (Haw. 2020) .....................................................11

*Hussey v. Say*,
   384 P.3d 1282 (Haw. 2016) ...................................................10

*Ito v. Inv'rs Equity Life Holding Co.*,
   346 P.3d 118 (Haw. 2015)......................................................11

*Jackson v. Vasquez*,
   1 F.3d 885 (9th Cir. 1993)................................................. 14-15

*La Union del Pueblo Entero v. Abbott*,
   604 F. Supp. 3d 512 (W.D. Tex. 2022) ..................................20

*Lake v. Fontes*,
   83 F.4th 1199 (9th Cir. 2023)................................................17

*Lance v. Dennis*,
546 U.S. 459 (2006) ...................................................................................4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................17

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ................................................................................13

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996)......................................................................13

*N. Cal. Power Agency v. Grace Geothermal Corp.*,
469 U.S. 1306 (1984) ................................................................................9

*New York ex rel. James v. Pennsylvania Higher Education Assistance
Agency*,
No. 19 CIV. 9155 (ER), 2020 WL 2097640 (S.D.N.Y. May 1, 2020) ................21

*Noel v. Hall*,
341 F.3d 1148 (9th Cir. 2003)....................................................................3

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001)......................................................................4

*Republic of Marsh. Is. v. United States*,
865 F.3d 1187 (9th Cir. 2017)..................................................................14

*Schilling v. Rogers*,
363 U.S. 666 (1960) ................................................................................14

*Schlesinger v. Councilman*,
20 U.S. 738 (1975) ...................................................................................7

*Searle v. Allen*,
148 F.4th 1121 (9th Cir. 2025)...................................................................3

*Sherwin-Williams v. County of Delaware*,
968 F.3d 264 (3d Cir. 2020)....................................................................17

*Siino v. Foresters Life Ins. & Annuity Co.*,
133 F.4th 936 (9th Cir. 2025) ..................................................................14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)..................................................................8

*Spirit of Aloha Temple v. County of Maui*,
49 F.4th 1180 (9th Cir. 2022)..................................................................4

*Spreewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir), *opinion amended on denial of reh'g*,
275 F.3d 1187 (9th Cir. 2001)..................................................................2

*Stauffer v. Brooks Bros., Inc.*
619 F.3d 1321 (Fed. Cir. 2010)..................................................................20

*Suncor Energy (U.S.A.), Inc. v. Cty. Commissioners of Boulder Cty.*,
No. 25-170 (U.S.) ..................................................................6

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ..................................................................15

*Trump v. New York*,
592 U.S. 125 (2020) ..................................................................18

*United States v. California*,
2020 WL 8183945 (E.D. Cal. Feb. 26, 2020) ..................................................................21

*United States v. Idaho*,
623 F. Supp. 3d 1096 (D. Idaho 2022) ..................................................................19

*United States v. Michigan*,
No. 1:25-cv-496, 2026 WL 194031 (W.D. Mich. Jan. 24, 2026)................. *passim*

*United States v. Morros*,
268 F.3d 695 (9th Cir. 2001)..................................................................12

*United States v. Rural Electric Convenience Co-op. Co.*,
922 F.2d 429 (7th Cir. 1991)..................................................................6, 7, 9, 10

*Vermont Agency of Nat. Res. v. United States*,
529 U.S. 765 (2000) ..................................................................20, 21

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998)..................................................................9

*Western Radio Servs. Co. v. Glickman,*
123 F.3d 1189 (9th Cir.1997) ...............................................................................4

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ...................................................................... 2, 17, 20

**Statutes**

28 U.S.C. § 1331 ...............................................................................................7

28 U.S.C. § 1345 ...............................................................................................7

28 U.S.C. § 1651 .............................................................................................14

28 U.S.C. § 2201 .............................................................................................14

**Rules**

FRCP Rule 24 .....................................................................................................8

HRCP Rule 24 .....................................................................................................8

**DEFENDANTS' RESPONSIVE SUPPLEMENTAL BRIEF**

Defendants welcome the opportunity to address the questions in the Court's February 11, 2026 minute order, ECF No. 39, and to respond to the United States' answers to the same, ECF No. 40. Defendants' motion for judgment on the pleadings should be granted for the reasons discussed here and in the original motion. ECF No. 22.

**A.      The United States' disavowal of any intent to amend its complaint supports judgment for Defendants.**

While the United States stated in its complaint that the "specific theories on which Hawaii would sue [were] known only to Hawaii," Compl., ECF No. 1, ¶ 14, it refuses to acknowledge that its predictions about which legal theories and claims the State would pursue were incorrect. Rather than "imposing retroactive liability for lawful conduct," *id*. ¶ 38, or seeking to "impose strict liability for the damages caused by fossil fuel emissions no matter where in the world those emissions were released[,]" *id*. ¶ 51 (quoting *City of New York v. Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021)), the State's suit targets the State Action Defendants' "tortious and deceptive conduct" in marketing their products, State Action Compl. ¶ 15. As the Hawaiʻi Supreme Court has explained, such a "lawsuit does not seek to regulate emissions or curb energy production[.]" *City & Cty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1193 (Haw. 2023), *cert. denied*, 145 S. Ct. 1111 (2025).  The United States' misconception of the State Action complaint and the relief requested is the

1

first of many uncertain links in the chain of contingencies underlying the United States' theory of standing.

But even if this Court were to look past the United States' reliance on speculation about what suit the State would file, and then further construe the State Action complaint consistent with the United States' flawed characterization, the United States has still failed to establish that it has Article III standing to sue.[1] Any alleged harm to the United States' sovereign, parens patriae, and proprietary interests is entirely contingent on the outcome of the State Action, and courts are "reluctant to endorse standing theories that require guesswork as to how independent decision-makers will exercise their judgment." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 413 (2013); *see also Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."). The United States' theory of harm necessarily relies on a long chain of contingencies that is too speculative and attenuated to establish standing. *See FDA. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024)

---

[1] Contrary to the United States' suggestion, this Court is not required to accept as true the United States' hypothetical predictions about the outcome of the State Action and its downstream impacts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the Court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

("[T]he links in the chain of causation must not be too speculative or too attenuated[.]") (cleaned up).[2]

**B.** ***Honolulu v. Sunoco* is relevant to Defendants' arguments, even though the *Rooker-Feldman* doctrine and claim preemption do not apply.**

Defendants agree that the Hawaiʻi Supreme Court's decision in *City & Cty. of Honolulu v. Sunoco, LP*, 537 P.3d 1173 (Haw. 2023), does not implicate the *Rooker-Feldman* doctrine or have claim preclusive effect in this case.

"[T]he *Rooker-Feldman* doctrine provides that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.'" *Searle v. Allen*, 148 F.4th 1121, 1128 (9th Cir. 2025) (quoting *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)). The doctrine is narrowly confined to "cases [1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Id.* (quoting *Brown v. Duringer Law Grp. PLC*, 86 F.4th 1251, 1254 (9th Cir. 2023)). It is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464

---

[2] Defendants agree that the merits of the United States' claims are not presently before the Court. ECF No. 40 at 6–7. The Court should disregard the United States' uninvited attempt to argue the merits. *See id.* at 8–10.

(2006). Because the United States was not a party to *Honolulu*, the *Rooker-Feldman* doctrine does not apply here.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997)). "The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Gila River Indian Cmty. v. Schoubroek*, 145 F.4th 1058, 1078 (9th Cir. 2025) (quoting *Owens*, 244 F.3d at 713). *Honolulu* was an interlocutory appeal in which the Hawai'i Supreme Court affirmed orders denying motions to dismiss state law claims brought by the City and County of Honolulu and its Board of Water Supply against oil and gas producers. 537 P.3d at 1180–82. The case is ongoing in state circuit court, with trial set for May 8, 2029. *See generally City & Cty. of Honolulu v. Sunoco LP*, No. 1CCV-20-0000380 (Haw. Cir. Ct.). Because there has been no final judgment on the merits of the *Honolulu* plaintiffs' claims, claim preclusion does not apply.[3]

---

[3]     The United States' supplemental brief also addresses issue preclusion. ECF No. 40 at 12. Issue preclusion is likewise inapplicable due to the lack of a final judgment in *Honolulu*. *See Spirit of Aloha Temple v. County of Maui*, 49 F.4th 1180, 1193 (9th Cir. 2022).

The United States faults Defendants for citing *Honolulu* "multiple times" in the briefing on their motion for judgment on the pleadings, arguing that "the decision is irrelevant to [Defendants'] pending Motion because it concerns the merits of the United States' claims, not the threshold issues that [Defendants] chose to raise." ECF No. 40 at 10. That is incorrect. Defendants first cited *Honolulu* in their memorandum in support of the motion to help explain the nature of the State Action, and to contrast it with the case the United States predicted the State would file when it initiated the Federal Action. ECF No. 22-1 at 11–12. Defendants cited *Honolulu* for essentially the same purpose in their reply. ECF No. 30 at 8 & n.1. They also cited the case as part of their *Younger* abstention argument, using it to support the propositions that the Hawaiʻi Supreme Court has recognized a strong State interest in remedying corporate misconduct, that litigants can raise federal defenses in Hawaiʻi courts, and that the State Action was not filed in bad faith, ECF No. 22-1 at 29–30—none of which the United States appears to be disputing. Finally, Defendants cited the case to show that no authority binding on any court in Hawaiʻi has accepted the United States' preemption theories. ECF No. 30 at 21.

As for the merits of the United States' claims, notwithstanding its stated eagerness to reach them, even the United States recognizes that the three issues raised in Defendants' pending motion are "threshold issues" and that the merits have not yet been presented and are not currently ripe for resolution. ECF No. 40 at 10.

Because the United States lacks standing, has no equitable cause of action, and seeks relief barred by *Younger*, the Court need not consider the merits of *Honolulu* or the cases cited by the United States at this point in time. For the same reasons, the Supreme Court's resolution of the questions presented in *Suncor Energy (U.S.A.), Inc. v. Cty. Commissioners of Boulder Cty.*, No. 25-170, while potentially relevant to the State Action, is unlikely to have any bearing on this case.

### C. To invoke the Court's equitable jurisdiction, the United States must demonstrate that intervention in the State Action would not provide it with an adequate remedy at law.

The United States represents that it "does *not* intend to seek to intervene in the State Action." ECF No. 40 at 12. It thereby forfeits any claim to equitable relief.

As Defendants have explained, one of the many traditional restrictions on equity is that it "has always acted only when legal remedies are inadequate[.]" ECF No. 22-1 at 23 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Courts have therefore appropriately described "the absence of an adequate remedy at law" as a "necessary prerequisite" for an equitable remedy. *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1129 (9th Cir. 2020) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)).

Thus, in *United States v. Rural Electric Convenience Co-op. Co.*, the Seventh Circuit held that, if the United States was able to intervene in a state court proceeding, it would have an adequate remedy at law, such that it would be precluded

from obtaining an injunction barring further prosecution of the state court case. 922 F.2d 429, 432–33 (7th Cir. 1991). The United States attempts to distinguish that case on the ground that its position here "is that [the] State Action is itself the unlawful action that should be enjoined by this Court[,]" while "*Rural Electric* involved the United States' security interest in a wholesale power contract between two rural electric cooperatives." ECF No. 40 at 13. But the relevant question is not what interest the party requesting equitable relief has, nor exactly what remedy it seeks, but whether that party "has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).

The United States, citing to 28 U.S.C. §§ 1331 and 1345, asserts that it has "a clear right to access its own federal courts to seek relief to redress injuries to the United States." ECF No. 40 at 13. But this elides the equity issue. "Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim." *Guzman*, 49 F.4th at 1314. "Subject matter jurisdiction regards 'whether the claim falls within the limited jurisdiction conferred on the federal courts' by Congress, while equitable jurisdiction regards 'whether consistently with the principles governing equitable relief the court may exercise its remedial powers.'" *Id.* (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975)). Defendants do not dispute that the United States can bring some preemption claims in federal court. *See* ECF No. 30 at 14. But it must, among

7

other things, "establish that [it] lacks an adequate remedy at law before securing equitable restitution[.]" *Guzman*, 49 F.4th at 1314 (quoting *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

Intervention in Hawai'i circuit courts is governed by Rule 24 of the Hawai'i Rules of Civil Procedure, a rule that is "substantially similar" to FRCP Rule 24. *County of Kaua'i v. Kala Indus., LLC*, No. CAAP-19-0000032, 2024 WL 1623668, at *2 n.5 (Haw. Ct. App. Apr. 15, 2024). A party may intervene by right when its motion is timely, it has an interest relating to the property or transaction which is the subject of the action, disposition of the action would impair or impede its ability to protect that interest, and its interest is not otherwise adequately represented. *Burnes v. Hawaiian Elec. Co.*, No. SCAP-25-0000531, 2026 WL 370176, at *4 (Haw. Feb. 10, 2026). Permissive intervention may be granted when a party's motion is timely, its claim or defense and the main action have a question of law or fact in common, and intervention would not unduly delay or prejudice the adjudication of the rights of the original parties. *Id.* at *16.

The United States complains that Defendants have not "explained how the United States could intervene in the State Action[,]" and says it is "equally uncertain whether the United States could successfully seek in the State Action the equitable relief sought here." ECF No. 40 at 14. As an initial matter, it is the United States, the "party seeking an injunction from a federal court[,]" that "must . . . show that it does

8

not have an adequate remedy at law." *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306 (1984) (Rehnquist, Circuit Justice); *see Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) ("To qualify for injunctive relief, the class members must demonstrate . . . that remedies at law are inadequate."); *Rural Electric*, 922 F.2d at 432. If the United States' position is that its ability to intervene and obtain adequate relief in the State Action is merely "uncertain[,]" ECF No. 40 at 14, then it has failed to make the showing required before it can invoke this Court's equitable powers, as the Seventh Circuit held in *Rural Electric*.

It is not Defendants' burden to "explain[] how the United States could intervene in the State Action." ECF No. 40 at 14. Nor are Defendants required to preemptively waive the State's right to oppose an intervention motion. *See id.* The State's position on such a motion would depend on whether the United States moved for mandatory or permissive intervention, when the motion was filed, and the arguments made regarding the United States' interests. *See Burnes*, 2026 WL 370176, at *4, 16. And irrespective of the State's position, the United States must demonstrate in this lawsuit that it could not possibly intervene in the State Action. It has failed to do so.

First, the United States argues that it "would not be a defendant" in the State Action "because Hawaii is not asserting any claims directly against the United States[.]" ECF No. 40 at 14. But to intervene in a Hawaiʻi circuit court case, a party

need not be subject to a claim; it can instead assert an interest, *Burnes*, 2026 WL 370176, at *4, or raise a defense, *id.* at *16. The Hawaiʻi Supreme Court has held that a party that meets the requirements of Rule 24, but against whom no claim is made, may properly intervene in a circuit court case (as an "intervenor," not an intervenor-plaintiff or an intervenor-defendant) in order to protect its interests by contesting a legal question. *Hussey v. Say*, 384 P.3d 1282, 1292 (Haw. 2016).

Second, the United States argues that it "would have sovereign immunity as to Hawaii's claims, as the Seventh Circuit discussed in *Rural Electric*." ECF No. 40 at 14. Again, the United States would not need to subject itself to a claim to intervene in the State Action. And *Rural Electric* works against the United States' argument; there, the Seventh Circuit found itself unable to determine whether sovereign immunity would have barred the United States from intervening in the state court proceedings at issue. 922 F.2d at 434–37. It thus refused to enjoin a state court proceeding unless it was clear that sovereign immunity would preclude the United States from intervening. *Id.* at 440.

Third, the United States argues that it may not be able to obtain "a permanent injunction prohibiting Hawaii from pursuing its state law claims" in the State Action. ECF No. 40 at 14. This argument assumes that a permanent injunction is the only remedy that would sufficiently protect the United States' claimed interests. If it intervened in the State Action, the United States would not need to ask the state court

to enjoin the State from continuing to prosecute its claims in that very same case. It would simply need to ask the state court to dismiss or adjudicate the claims in favor of the State Action Defendants. Unless it can disprove that it would be able to obtain *that* relief in the State Action, the United States has not shown there is no adequate remedy available at law.

Still, it may be the case that the United States *could* seek the injunction it cites here as a roadblock to intervention. Hawaiʻi courts have "broad discretionary power to craft remedies to preserve equity." *Ching v. Case*, 449 P.3d 1146, 1170 (Haw. 2019) (ellipses omitted) (quoting *Ito v. Inv'rs Equity Life Holding Co.*, 346 P.3d 118, 131 (Haw. 2015)). Under Hawaiʻi law, "[a]n equity court's sound discretion is not bound by strict rules of law, but it can be molded to do justice." *HawaiiUSA Fed. Credit Union v. Monalim*, 464 P.3d 821, 829 (Haw. 2020). The United States certainly produces nothing to demonstrate that the relief it would desire in state court is unavailable—the most the United States provides is its own "uncertain[ty]." ECF No. 40 at 14.

For similar reasons, seeking leave to file an amicus brief in the State Action— a proposal the United States admits is "realistic[,]" *id.* at 15—could provide an adequate legal remedy to the United States, as it would allow the United States to raise its preemption arguments in state court and could lead to a favorable (from its perspective) resolution of the State Action.

11

The United States' final argument regarding intervention is that "the Ninth Circuit's clear exceptions to the Anti-Injunction Act and *Younger* abstention, which allow the United States to seek injunctions of state court proceedings, would make little sense" if it had to "seek intervention in a state court action before seeking a federal-court injunction[.]" *Id.* To begin, Defendants dispute that there is a "hard-and-fast rule" in the Ninth Circuit that "*Younger* is inapplicable in any case where the United States is the federal plaintiff." ECF No. 30 at 18. Defendants have explained at some length why *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001), does not stand for that proposition, *see* ECF No. 22-1 at 31–33, ECF No. 30 at 18–20, and the United States' only rebuttal is to excerpt individual sentences from *Morros* and related cases while ignoring the factual contexts in which those cases arose. *See* ECF No. 29 at 30–31.[4]

But even assuming that the Anti-Injunction Act and *Younger* do "allow the United States to seek injunctions of state court proceedings," ECF No. 40 at 15, the United States' argument is a non sequitur. Just because certain legal authorities or principles do not stand as barriers to injunctive relief, that does not mean every request for an injunction is necessarily proper. Whatever other impediments there may or may not be, "[i]t is a basic doctrine of equity jurisprudence that courts of

---

[4] Defendants have also preserved for appeal their argument that the United States should not be categorically exempt from the Anti-Injunction Act. ECF No. 22-1 at 33 n.15.

12

equity should not act when the moving party has an adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) (ellipses omitted) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). Defendants ask the Court to enforce that fundamental rule in this case.

**D.      Neither the All Writs Act nor the Declaratory Judgment Act provides an equitable cause of action.**

As Defendants demonstrated in their motion, neither the All Writs Act nor the Declaratory Judgment Act independently provides the United States with a cause of action to enjoin the State Action. ECF 22-1 at 21 & n.7. The United States did not deny this in its opposition. ECF 29.

The United States' supplemental brief does not dispute Defendants' argument, either. It states that "[t]he United States has an equitable action that does not depend on either the All Writs Act or the Declaratory Judgment Act[,]" apparently agreeing with the proposition that neither act is itself the source of a cause of action. ECF 40 at 15. And while stating that "the All Writs Act and Declaratory Judgment Act may still be relevant to the United States' suit[,]" *id.* at 16, the United States merely points out that each act would allow the Court to issue the declaratory and injunctive relief they seek *if* they were to prevail on their claims. The United States has cited no authority that either act creates a *right* to the particular relief requested.

As the Ninth Circuit recently affirmed,

> Although the DJA allows a court to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), it "does not create new substantive rights," *Republic of Marsh. Is. v. United States*, 865 F.3d 1187, 1199 n.10 (9th Cir. 2017). Instead, the DJA is a purely remedial statute that "provides an affirmative remedy only when a cause of action otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th Cir. 2022) (per curiam); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (relief under the DJA "presupposes the existence of a judicially remediable right").

*Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 945 (9th Cir. 2025).

Similarly, the All Writs Act merely allows federal courts to issue writs in aid of their existing jurisdiction, but is not itself a source of jurisdiction or rights:

> While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process "in aid of" the issuing court's jurisdiction. 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). . . . [T]he Act does not enlarge that jurisdiction[.]

*Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999). The Ninth Circuit has specifically held that where a petitioner lacks a common law cause of action, the All Writs Act does not otherwise entitle him to general equitable relief. *Doe v. Immigration & Naturalization Serv.*, 120 F.3d 200, 204–05 (9th Cir. 1997). "An order is not authorized under the Act unless it is designed to preserve jurisdiction

14

that the court has acquired from some other independent source in law." *Id.* (quoting

*Jackson v. Vasquez,* 1 F.3d 885, 889 (9th Cir. 1993)).

Absent a statutory cause of action, the United States must invoke the Court's

equitable jurisdiction. The Supreme Court has explained that the equitable

jurisdiction of federal courts depends on "whether the relief . . . requested . . . was

traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v.*

*All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).[5] Unless the relief requested or an

"analogous form of relief was available in the High Court of Chancery in England

at the time of the founding[,]" federal courts have no jurisdiction to issue it,

notwithstanding either the Declaratory Judgment Act or All Writs Act. *Trump v.*

*CASA, Inc.*, 606 U.S. 831, 842 (2025).

This case reflects a wholly unprecedented attempt by the United States to

enjoin a state lawsuit for state tort damages against a third-party defendant based

merely on allegations that the lawsuit would somehow affect federal interests. *See*

ECF 29 at 25–30; ECF 40 at 15–17. The United States has thus far repeatedly failed

to identify a single case in the nation's long history where sufficiently analogous

---

[5]     In fact, in *Grupo Mexicano*, the Court rejected the argument that the All Writs Act provided independent jurisdiction to issue the requested injunction, finding that the power conferred by the act is defined by "what is the usage, and what are the principles of equity applicable in such a case." 527 U.S. at 326 n.8 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 219 (1945)). Thus, it was still necessary for the Court to find a historical analogue for the requested injunction. *Id.*

equitable relief was awarded. On the other hand, the State has shown that the relief the United States seeks not only lacks a historical analogue, but also violates longstanding constraints on the federal courts' equitable jurisdiction. *See* ECF 22-1 at 23–26; ECF 30 at 13–17 (federal courts sitting in equity will not typically interfere with pending state court proceedings, and equitable remedies are only appropriate when there is no adequate remedy available at law). Because the United States lacks an equitable cause of action to enjoin the State Action, it cannot rely on either the Declaratory Judgment Act or the All Writs Act to supply a remedy.

E. **The discussion of standing in *United States v. Michigan* is directly applicable and supports judgment for Defendants.**

The Michigan district court's standing analysis is directly applicable. The United States filed essentially identical complaints against Michigan and Hawai'i to prevent both states from pursuing state law claims, in state court, against oil and gas companies. The United States lacks standing in this case for the same reasons the Michigan district court found it lacked standing—its asserted injuries are conjectural and hypothetical, and it fails to establish a causal connection to any asserted injury that is fairly traceable to the State. *See United States v. Michigan*, No. 1:25-cv-496, 2026 WL 194031, at *12–14 (W.D. Mich. Jan. 24, 2026). That Hawai'i ultimately filed the State Action and Michigan had not filed a state-court lawsuit does not make the Michigan district court's standing analysis "distinguishable," ECF No. 40 at 17, nor does it undermine its legally sound and persuasive reasoning.

The Michigan district court found that the United States failed to establish "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical" because its theory of harm relied "on contingent future events," including that Michigan would prevail in any state court lawsuit. 2026 WL 194031, at *12. The United States' theory of standing in this case is also based entirely on the potential downstream effects of the State Action. "[E]ven if [the United States] could show that a lawsuit were certainly impending," as in this case, "it did not establish that such a lawsuit would cause a concrete injury[.]" *Id*. (quoting *Sherwin-Williams v. County of Delaware*, 968 F.3d 264, 270 (3d Cir. 2020)). Harm that is based on the unpredictable outcome of a separate lawsuit, in a different court, to which the United States is not a party fails "to establish an injury sufficient to support standing." *Id*.; *see Whitmore*, 495 U.S. at 159–160; *see also Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) ("[C]onjectural allegations of potential injuries are insufficient to plead a plausible real and immediate threat[.]") (cleaned up).

The Michigan district court also found that the United States failed to establish that the injury it complained of was "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." 2026 WL 194031 at *13 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Just like in the Michigan case, the United States' injuries in this case depend on the State defeating any federal preemption defenses raised by

17

the State Action Defendants, the State winning its lawsuit, the State successfully defending any judgment entered in its favor on appeal, and the judgment effecting a result "so significant that it impacts federal energy policy, federal leasing revenues, the domestic cost of energy, and the federal government's relations with foreign countries." *Id*. at \*13 (footnote omitted). This chain of possibilities is too speculative and attenuated to establish an injury fairly traceable to the State, even if the chain is slightly shorter because the State has in fact filed the State Action complaint. *See id*. at \*14; *All. for Hippocratic Med*., 602 U.S. at 385, 390 (noting that plaintiffs failed to "show a predictable chain of events leading from the [challenged] action to the asserted injury" given breaks in "any chain of causation"); *see also Trump v. New York*, 592 U.S. 125, 133 (2020) (stating that plaintiffs' "prediction about future injury [and its effects are] just that—a prediction" insufficient to establish Article III standing).

Instead of meaningfully engaging with the Michigan district court's standing analysis, the United States regurgitates the same conclusory position that it "suffers injury to its sovereignty when a State usurps federal authority to regulate in an area of exclusive federal control" or "when its laws are violated." ECF No. 40 at 20–21. But the United States fails to connect the dots between a state filing state-law based claims, in state court, against oil and gas companies and any violation of federal laws or impermissible regulation. Filing and litigating state law claims in state court does

not itself violate any federal laws, even if some of those state law claims may be preempted. The Michigan district court described the "long line of state attorney general public interest actions brought against national industry groups in areas that are heavily regulated by the federal government." 2026 WL 194031 at *3–6. The State Action joins this long line of cases.

Similarly, filing and litigating a lawsuit in state court does not itself "usurp[] federal authority to regulate in an area of exclusive federal control." ECF No. 40 at 20. The United States previously claimed that a significant damages award in the State Action would essentially regulate the State Action Defendants' behavior and intrude on the United States' exclusive regulatory authority, ECF No. 29 at 15, but that claim is too speculative and attenuated for the reasons already discussed. As the United States itself explained in an amicus brief, while the state court lawsuit is pending, "there is no regulation in effect, even in the form of an imposition of liability, and it is speculative whether there ever will be." Brief for the United States as Amicus Curiae at 9, *Alabama v. California*, 145 S. Ct. 757 (2025) (No. 158, Orig.).

To support its theory of standing, the United States relies on cherry-picked quotes from cases that are entirely distinguishable. First, the United States references cases challenging state laws or codes allegedly preempted by federal law. *See United States v. Idaho*, 623 F. Supp. 3d 1096 (D. Idaho 2022) (challenging Idaho's criminal abortion law as preempted by the Emergency Medical Treatment and Labor Act); *La*

*Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 527 (W.D. Tex. 2022) (challenging amendments to the Texas Election Code as violating the Voting Rights Act and the Civil Rights Act). There is a clear difference, however, between challenging a state law or code as unconstitutional or otherwise facially barred by federal law and challenging the filing and adjudication of a state lawsuit. Since a statute defines proscribed activities and governs conduct immediately upon becoming effective, the harm caused by a preempted state law or code is concrete. Any harm caused by a lawsuit, however, is dependent on the outcome of the lawsuit and the parties' reaction to that outcome—not the mere filing and adjudication of the lawsuit itself—making this alleged harm too speculative and attenuated to establish standing. *See Michigan*, 2026 WL 194031 at *13–14; *see also see Whitmore*, 495 U.S. at 159–160.

The United States next cites to cases discussing standing to sue for harms caused by federal statutory violations. *Stauffer v. Brooks Bros., Inc*. 619 F.3d 1321, 1325–26 (Fed. Cir. 2010) (discussing *qui tam* relator standing to bring claims for violations of a federal statute); *Vermont Agency of Nat. Res. v. United States*, 529 U.S. 765, 772–778 (2000) (same); *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 192 (D. Conn. 2017) (holding that the Equal Employment Opportunity Commission had standing to sue for a violation of a statute enacted by Congress that "define[d] an injury in fact to the United States").

20

These cases simply recognize that Congress "can[] define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vermont Agency of Nat. Res.*, 529 U.S. at 773. The United States has not identified any statute recognizing that the State's prosecution of its claims is injurious to the United States, so these cases are unhelpful to its standing argument.

Finally, the United States cites to a case challenging California's attempt to directly enter into a cap-and-trade program agreement with Quebec and Ontario to reduce greenhouse gas emissions. *United States v. California*, 2020 WL 8183945 (E.D. Cal. Feb. 26, 2020). While the California district court found that the United States plausibly alleged that this cap-and-trade program agreement usurped federal authority to conduct foreign affairs, *id*. at *3, directly entering into an agreement with foreign governments to reduce greenhouse gas emissions is plainly distinguishable from filing and litigating a lawsuit in state court against oil and gas companies for deceptive commercial conduct, which is a matter of traditional state responsibility. *See Michigan*, 2026 WL 194031 at *4–5. The only other case cited by the United States also does not appear to support its theory of standing. *New York ex rel. James v. Pennsylvania Higher Education Assistance Agency*, No. 19 CIV. 9155 (ER), 2020 WL 2097640, at *12–18 (S.D.N.Y. May 1, 2020) (holding that the New York attorney general could proceed with certain claims against a federal loan servicer for violations of federal and state law while dismissing other claims as

21

preempted by the Higher Education Act). The United States' cited cases ultimately add no support to its claim that merely filing and litigating the State Action causes an injury to its sovereign interests sufficient to establish Article III standing.

**F.      Conclusion**

For the foregoing reasons, and those argued in Defendants' earlier briefs, Defendants' motion for judgment on the pleadings should be granted.

DATED:  Honolulu, Hawaiʻi, March 12, 2026.

/s/ *Kalikoʻonālani D. Fernandes*
KALIKOʻONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the attached was served electronically through the Court's CM/ECF system or conventionally by mailing copies via U.S. Mail, postage prepaid, upon the following:

ADAM R.F. GUSTAFSON
ROBERT N. STANDER
JUSTIN D. HEMINGER
United States Department of Justice
Environment and Natural Resources Division
Post Office Box 7415
Washington, D.C. 20044

Attorneys for Plaintiff

DATED: Honolulu, Hawai‘i, March 12, 2026.

/s/ *Kaliko‘onālani D. Fernandes*
KALIKO‘ONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants