ANNE E. LOPEZ                    7609
Attorney General of Hawai'i
KALIKO'ONĀLANI                   9964
D. FERNANDES
Solicitor General
LAUREN K. CHUN                   10196
First Deputy Solicitor General
THOMAS J. HUGHES                 11059
CAITLYN B. CARPENTER             11928
Deputy Solicitors General
Department of the Attorney General,
  State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Tel:  (808) 586-1360
E-mail:  kaliko.d.fernandes@hawaii.gov
         lauren.k.chun@hawaii.gov
         thomas.j.hughes@hawaii.gov
         caitlyn.b.carpenter@hawaii.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF HAWAI'I; JOSHUA BOOTH GREEN, Governor of Hawai'i, in his official capacity; and ANNE E. LOPEZ, in her official capacity as Hawai'i Attorney General,<br><br>Defendants. | No. 1:25-cv-00179-HG-WRP<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF UNITED STATES' MOTION TO ALTER OR AMEND THE JUDGMENT [ECF NO. 46]; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. Helen Gillmor |

**TABLE OF CONTENTS**

I.    BACKGROUND ......................................................................................2

II.   LEGAL STANDARD ............................................................................3

III.  ARGUMENT...........................................................................................4

    A.    Dismissal without prejudice would be appropriate..............................4

    B.    There is no basis to provide the United States with leave to
        amend or supplement its complaint.......................................................5

        1.    The United States falls far short of the Rule 59
            standard. ..................................................................................5

        2.    The United States' motion should be decided under
            Rule 59, but even under Rule 15, it would fail on
            futility and timeliness grounds.................................................8

IV.   CONCLUSION.....................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*389 Orange St. Partners v. Arnold*,
    179 F.3d 656 (9th Cir. 1999) ........................................................................4, 5

*Barke v. Banks*,
    25 F.4th 714 (9th Cir. 2022) ........................................................................6, 7

*Clark v. IRS*,
    No. 06-00544 SPK-LEK, 2007 WL 9711110 (D. Haw. Sept. 27, 2007) .............14

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*,
    833 F.2d 208 (9th Cir. 1987) ...........................................................................6

*De Saracho v. Custom Food Mach., Inc.*,
    206 F.3d 874 (9th Cir. 2000) .........................................................................14

*EscapeX IP LLC v. Google LLC*,
    No. 22-cv-08711-VC, 2024 WL 557729 (N.D. Cal. Feb. 12, 2024).....................6

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008)........................................................................................7

*Far Out Prods., Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001) ...........................................................................5

*Fleck & Assocs., Inc. v. City of Phoenix*,
    471 F.3d 1100 (9th Cir. 2006) .........................................................................4

*Hunter v. U.S. Dep't of Educ.*,
    115 F.4th 955 (9th Cir. 2024) ........................................................................10

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982) .......................................................................14

*Kaufmann v. Kijakazi*,
    32 F.4th 843 (9th Cir. 2022) ...........................................................................3

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ................................................................. 1, 5, 7

*Lindauer v. Rogers*,
   91 F.3d 1355 (9th Cir. 1996) ..............................................................8, 9

*Minnesota v. Am. Petroleum Inst.*,
   No. 62-cv-20-3837 (Minn. Dist. Ct.) ...................................................10

*Navajo Nation v. Dep't of Interior*,
   876 F.3d 1144 (9th Cir. 2017) ...............................................................8

*S&G Labs Haw., LLC v. Graves*,
   712 F. Supp. 3d 1364 (D. Haw. 2024)....................................................1

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*,
   979 F.3d 1209 (9th Cir. 2020) ............................................................4, 5

*Wheeler v. City of Santa Clara*,
   894 F.3d 1046 (9th Cir. 2018) .............................................................10

*Wood v. Ryan*,
   759 F.3d 1117 (9th Cir. 2014) ...............................................................3

*Younger v. Harris*,
   401 U.S. 37 (1971)................................................................................2

**Rules**

FRCP Rule 15 ............................................................................. passim

FRCP Rule 59 ............................................................................. passim

FRCP Rule 60 ...............................................................................8, 9

Local Rule 10.4 ................................................................................9

**Other Authorities**

11 Charles Wright & Arthur Miller, Federal Practice and Procedure
§ 2810.1 (2d ed. 1995) ........................................................................7

11 Federal Practice and Procedure § 2859 (1973)....................................6

6 Mary Kay Kane & Howard M. Erichson, Federal Practice and
   Procedure § 1489 (3d ed. 2026)...........................................................9

**DEFENDANTS' RESPONSE TO PLAINTIFF UNITED STATES'
MOTION TO ALTER OR AMEND THE JUDGMENT**

An FRCP Rule 59(e) motion like the United States' "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *S&G Labs Haw., LLC v. Graves*, 712 F. Supp. 3d 1364, 1375 (D. Haw. 2024) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). The United States acknowledges this high standard, ECF No. 46 at 7, but does not attempt to meet it. It refers to two declarations, but the declarants only hypothesize about the effect a Minnesota state court case could have on the federal government, saying nothing that calls into question the judgment in this case. In any event, the declarations cannot be considered newly-discovered because they come from federal officers who could have offered their opinions at any time. There have been no changes in the law, and the United States identifies no clear error by the Court. Instead, it argues that its own misunderstanding of one of the Court's supplemental briefing questions caused it to provide an answer that it now wishes to take back. That is not the purpose of Rule 59(e).

Although the present motion is not a Rule 15 motion to amend or supplement a pleading, the United States argues as if it is. Yet it fails to provide any specific information about how it could rewrite its complaint to avoid a dismissal on

1

standing. The Court need not engage in the Rule 15 analysis at all, but to the extent it does, it is quite clear that any attempt to revise the complaint would be futile.

## I.   BACKGROUND

On April 28, 2025, Governor Green said in an interview that Hawaiʻi would be filing suit against fossil fuel companies three days later, on May 1, 2025. Compl., ECF No. 1, ¶ 4. On April 30, 2025, the United States filed a complaint requesting that this Court declare unconstitutional the claims in the yet-to-be-filed state court lawsuit (the "State Action") and enjoin Defendants from "taking actions to assert" those claims. *Id.* at 31. The State Action was filed as planned. ECF No. 22-2.

The United States served its complaint on May 27, 2025. ECF Nos. 11–14. Defendants answered the complaint on June 30, 2025, ECF No. 19, and on July 25, 2025, they moved for judgment on the pleadings, arguing that the United States lacked standing, that it lacked an equitable cause of action, and that the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971), ECF No. 22-1 at 9.

After the initial briefs were filed, the Court issued a minute order in which it directed the parties to brief a number of additional issues. ECF No. 39. The Court's first question was whether, given Defendants' argument that the United States had incorrectly predicted what claims they would make in the State Action, the United States was seeking leave to amend its complaint. *Id.* at 1–2. The Court told the United States to "address the question of leave to amend the Complaint or why it

2

believes amendment is not necessary to address the issues raised in the Defendants' Motion[.]" *Id.* at 2. The United States responded that it did not need to seek leave to amend its complaint and that no amendment of the complaint was necessary. ECF No. 40 at 6. Rather than further explaining its position on amendment of the complaint, the United States used the remainder of its response to raise unrelated issues about Defendants' reply brief. *Id.* at 6–10. Defendants described this response as a "disavowal of any intent to amend [the United States'] complaint" and said that it "support[ed] judgment for Defendants." ECF No. 42 at 8.

On April 15, 2026, the Court granted Defendants' motion. ECF No. 43. It ordered that the complaint be dismissed with prejudice and without leave to amend. *Id.* at 27, 29–30. Judgment was entered the same day. ECF No. 44.

At no point between the filing of the complaint on April 30, 2025 and the entry of judgment on April 15, 2026 did the United States amend, or seek consent or leave to amend, its complaint.

## II.    LEGAL STANDARD

"[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) (quoting *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (per curiam)). "A district court generally should not grant a Rule 59(e) motion in the absence of 'newly discovered evidence,' 'clear error,' or

'an intervening change in the controlling law.'" *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## III.   ARGUMENT

The Court's April 15 order dismissed the United States' complaint with prejudice and without leave to amend. ECF No. 43 at 27, 29–30. Defendants have no objection to the Court amending the judgment to indicate that the dismissal is without prejudice. But as the Court already concluded, there is "no basis to provide [the United States] with another opportunity for leave to amend." *Id.* at 27.

### A.   Dismissal without prejudice would be appropriate.

As the United States contends, the dismissed of a complaint for lack of standing should be without prejudice. *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106–07 (9th Cir. 2006). Because Ninth Circuit precedent on this point is clear, Defendants agree that the United States has met the otherwise high standard for a Rule 59(e) motion solely to the extent they request that the judgment in this case be amended to be a dismissal without prejudice. But for the reasons discussed below, Defendants do not believe that the United States would be able to properly invoke this Court's jurisdiction even if it were to "refil[e] its lawsuit with more detailed allegations supporting its standing[,]" ECF No. 46 at 13, and would expect to seek dismissal of any such refiled lawsuit on standing and other grounds.

4

**B.    There is no basis to provide the United States with leave to amend or supplement its complaint.**

In all other respects, the United States' motion fails to meet the high bar set by Rule 59(e). Although the United States recites the correct standard for a Rule 59(e) motion, *id.* at 7, it then bypasses that standard and asks the Court to apply the more lenient standard of Rule 15. Its motion fails under either Rule.

**1.    The United States falls far short of the Rule 59 standard.**

The Court should not otherwise alter or amend the judgment under Rule 59 because the United States does not identify "'newly discovered evidence,' 'clear error,' or 'an intervening change in the controlling law.'" *Wells Fargo*, 979 F.3d at 1218 (quoting *389 Orange St. Partners*, 179 F.3d at 665).

The United States puts forward no newly discovered evidence. Although it attaches and cites to two declarations that were recently executed and filed in a Minnesota district court case (one from an EPA Assistant Administrator and one from the Deputy Secretary of State), ECF No. 46 at 10, a Rule 59(e) motion "may *not* be used to . . . present evidence for the first time when [it] could have reasonably been raised earlier[,]" *Wells Fargo*, 979 F.3d at 1218 (quoting *Kona Enters.*, 229 F.3d at 890). That includes evidence that the moving party could have "discover[ed] . . . sooner through the exercise of reasonable diligence." *Id.* (quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998 (9th Cir. 2001)).

Declarations from federal officials who could have been asked at any time to offer testimony or provide information relevant to the United States' pleadings or briefs do not constitute newly discovered evidence. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987) (under Rule 59, "if [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered" (quoting 11 Federal Practice and Procedure § 2859 (1973))); *cf. EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) (describing a Rule 59(e) motion as "frivolous" where it was based on two declarations from the movant's own personnel "contain[ing] information that was already known" by the movant prior to the order it sought to reverse).

The United States also fails to identify clear error. A district court does not abuse its discretion—let alone commit clear error—if it "gave [the plaintiff] an opportunity to state what additional details [it] would add to [its] complaint if given the opportunity and [the plaintiff] did not do so, instead arguing that its existing allegations were sufficient." *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022). That is precisely what happened in this case. The Court directly asked the United States to "address the question of leave to amend the Complaint" given the "issues raised in the Defendants' Motion for Judgment on the Pleadings." ECF No. 39 at 2. In response, the United States "argu[ed] that [its] existing allegations were sufficient."

6

*Barke*, 25 F.4th at 721. It said: "The United States need not seek leave to amend its Complaint because the allegations fully support its claims" and "[n]o amendment to the United States' Complaint is necessary to respond to Hawaii's standing argument." ECF No. 40 at 6.

The United States now says that it misunderstood the Court's supplemental briefing question, that it did not mean to decline the opportunity to amend its complaint, and that resolving this case based on the answer it actually gave to the Court's question (rather than the answer it now wishes it gave) somehow deprived it of "a fair opportunity to correct its complaint to address the jurisdictional deficiency identified by the Court." ECF No. 46 at 4, 8–9. If that is the United States' clear error argument, it is woefully insufficient. Rule 59(e) "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)). Regardless of how the United States understood the Court's supplemental briefing question, it could have raised any of the arguments it now makes at an earlier stage of the case. An unsuccessful party may regret decisions it made in the course of litigation, but Rule 59(e) is not a vehicle to revisit old mistakes. That is the case even when a party fails to realize its mistake until after the court has ruled against it. *See Kona Enters.*, 229 F.3d at 890–91.

7

Even if the Court had never ordered supplemental briefing, the United States had multiple opportunities to amend its complaint. The United States could have amended its complaint without leave from the date it was filed until 21 days after Defendants filed their answer. FRCP Rule 15(a)(1)(B). And at any time after that, including during the nine months when Defendants' motion for judgment on the pleadings was pending, the United States could have sought Defendants' consent or the Court's leave to amend the complaint. FRCP Rule 15(a)(2). The United States' deliberate decision not to amend its complaint for almost a year does not constitute clear error on the part of the Court.

There is also nothing in the United States' motion that could possibly be construed as an argument that there has been an intervening change in the controlling law.

> **2.    The United States' motion should be decided under Rule 59, but even under Rule 15, it would fail on futility and timeliness grounds.**

"[O]nce judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996). After judgment, the "'policy of promoting the finality of judgments' somewhat displaces Rule 15's openhandedness." *Navajo Nation v. Dep't of Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (quoting *Lindauer*, 91 F.3d at 1357).

Thus, "[a]s a practical matter," a party seeking to amend its complaint after judgment should generally file a Rule 15 motion simultaneously with a Rule 59 or 60 motion, "since it would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend." 6 Mary Kay Kane & Howard M. Erichson, Federal Practice and Procedure § 1489 (3d ed. 2026). And in this district, a Rule 15 motion must be "accompanied by the proposed amended pleading in redline format[.]" Local Rule 10.4.

As discussed above, the United States styles its motion as a Rule 59 motion, yet it essentially ignores the Rule 59 standard and argues the Rule 15 standard. Because reopening the judgment is a precondition to amending the complaint, *Lindauer*, 91 F.3d at 1357, the Court should deny the present motion under Rule 59 and need not consider the United States' arguments concerning amendment of its complaint.

If, however, the Court does consider those arguments, the United States has failed to demonstrate that it would be able to successfully move to amend its complaint. Indeed, the new complaint described by the United States sounds exactly like the old one: it says it plans to allege that the State Action "raises legal claims that . . . are preempted by federal law" and that these "preempted state law claims" will "effect[] an injury to federal sovereignty," and "conflict[] with the United

9

States' administration of the Clean Air Act . . . and the exercise of its foreign affairs powers[.]" ECF No 46 at 11–12.

"Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 971 (9th Cir. 2024) (quoting *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018)). The United States insists that amendment of its complaint would not be futile because it can now "plead allegations more detailed than those in the complaint to flesh out the harms caused by Hawaii's State Action." ECF No. 46 at 10. "To that end," the United States directs the Court to the two declarations filed in the Minnesota case. *Id.*

But the declarations do not refute the futility of amending the United States' complaint. For starters, the declarants opine on the effects they think a Minnesota state court case (*Minnesota v. Am. Petroleum Inst.*, No. 62-cv-20-3837 (Minn. Dist. Ct.)) will have on the work of the EPA and the State Department. *See* Szabo Decl., ECF No. 46-1, at ¶¶ 17–27; Landau Decl., ECF No. 46-2, at ¶¶ 16–23. It does not necessarily follow that Hawaii's State Action—brought five years later in a different state with its own statutory and common law, a completely different geography and climate, a different energy market, and about a quarter of the population—will have the same effects. The declarants' fleeting references to similar lawsuits by other

10

states and localities hardly bridge the gap between the Minnesota case and the State Action at issue here. *See* Szabo Decl. ¶¶ 6, 22; Landau Decl. ¶ 18.

Second, the declarations largely consist of the declarants' descriptions of federal laws and policies, rather than any specific information about the impacts of state climate deception lawsuits. Assistant Administrator Szabo primarily provides his understanding of how certain titles and sections of the Clean Air Act operate and interact. Szabo Decl. ¶¶ 7–16, 19–20, 23, 26. Deputy Secretary Landau's declaration chiefly discusses climate-related statutes, treaties, executive agreements, and executive orders dating back to 1987. Landau Decl. ¶¶ 4–15. This information was available to the United States when it filed its original complaint. Indeed, much of it already *was* raised in the complaint and the United States' first brief. *See* Compl. ¶¶ 1–3, 15–17, 20–27 (discussing the Clean Air Act, the Global Climate Protection Act, the United Nations Framework Convention on Climate Change, the Kyoto Protocol, the Paris Agreement, and several of President Trump's executive orders); ECF No. 29 at 11–13 (similar).

Third, to the extent the declarations do discuss the effect of a state climate deception lawsuit, they mostly consist of conclusory statements with few supporting details. The Szabo Declaration rests on the idea that the Minnesota lawsuit will "alter" the energy market and the economy as a whole, something it says is creating "uncertainty" and "adversely impacting" or "undermin[ing]" the functions of the

11

EPA. Szabo Decl. ¶¶ 17–19; *see id.* ¶¶ 21–22, 24–25, 27 (further references to undermining, uncertainty, disruption, and conflict). This imprecision is unsurprising, as the declarant does not know if Minnesota's lawsuit will impose "hundreds of millions" or "billions" of dollars in liability—or none at all, since liability is only "threaten[ed]" at this point. *Id.* ¶ 24.

Likewise, the Landau Declaration says Minnesota's lawsuit "could" increase energy costs, which might "undermin[e]" unspecified foreign policy interests, harm relations with unspecified foreign countries, and cause those countries to retaliate by taking unspecified "steps against U.S. interests." Landau Decl. ¶¶ 17–21. Both officials' statements are essentially indistinguishable from the broad allegations in the original complaint filed in this case. *See, e.g.*, Compl. ¶¶ 35 ("Hawaii's state law claims conflict with the Clean Air Act's purposes and objectives[.]"), 38, 39 ("Hawaii's state law claims would further undermine federal objectives by increasing energy costs and disrupting the national energy market[.]"), 70, 71, 84 ("Hawaii's state law claims also could complicate the United States' relations with foreign countries[.]"), 85 ("Hawaii's anticipated lawsuit interferes with the United States' foreign policy on greenhouse gas regulation[.]").

Fourth, new allegations based on these declarations would not save an amended complaint from dismissal. The Court granted judgment in Defendants' favor for multiple reasons, including because the United States' complaint "does not

12

describe any concrete injury[,]" because its alleged injury "depends on multiple layers of unpredictable future events[,]" and because its theory of causation "is based on a highly attenuated chain of possibilities that is dependent on decisions of third parties and independent actors." ECF No 43 at 16, 17, 21. The declarations do not resolve these problems because no one, including high-ranking officials in the EPA and the State Department, can predict exactly what will happen in the State Action, how the State Action Defendants will respond, and what effect, if any, their responses will have on the worldwide energy market and the governments of the United States and various foreign countries.

Defendants also prevailed in this case because the Court concluded that "[p]rinciples of equity, comity, and federalism prevent a federal court from enjoining a state court proceeding when the plaintiff's sole allegations of harm are that the state court proceeding may cause speculative, abstract injuries." *Id.* at 23–24. The declarations do not reduce the speculative nature of the United States' injuries, and the addition of further factual allegations would do nothing to dispel the "longstanding" equitable principles that "strong[ly]" counsel against "federal intervention in state judicial processes." *Id.* at 23.

Furthermore, Rule 15, like Rule 59, accounts for the movant's diligence. A district court may deny a motion to amend "if it will cause unfair delay[,]" as in cases "[w]here the party seeking amendment knows or should know of the facts upon

13

which the proposed amendment is based but fails to include them in the original complaint[.]" *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000) (quoting *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir. 1982)). Even assuming there is something in the declarations that could save the United States' complaint, there is no reason why it could not have obtained that information before filing this lawsuit, and the United States does not even attempt to explain why it did not include the information in its original complaint. The United States can hardly argue that it lacked the ability to query the EPA or the State Department for their views before filing suit.

Finally, to the extent the United States expresses a desire to *supplement* its complaint to correct its standing defect rather than to *amend* its complaint for the same purpose, its arguments fail for the same reasons. The distinction is that "supplemental pleadings deal with transactions, occurrences, or events that happened after the filing of the original pleading," while "amended pleadings . . . address transactions, occurrences, or events that happened before the filing of the original pleading." *Clark v. IRS*, No. 06-00544 SPK-LEK, 2007 WL 9711110, at *3 (D. Haw. Sept. 27, 2007). The difference is usually "of little consequence" because "courts apply the same standard governing leave to amend a complaint" to a motion for leave to supplement. *Id.* Again, the United States has not filed a Rule 15 motion, but even if it had, its failure to identify any relevant transactions, occurrences, or

14

events that occurred before *or* after the filing of its complaint would doom its efforts under 15(a) or 15(d).

## IV.   CONCLUSION

The Court should deny the United States' motion to the extent it seeks to alter or amend the judgment to grant leave to file an amended or supplemental complaint.

DATED:    Honolulu, Hawaiʻi, June 12, 2026.

/s/ *Thomas J. Hughes*
KALIKOʻONĀLANI D. FERNANDES
LAUREN K. CHUN
THOMAS J. HUGHES
CAITLYN B. CARPENTER

Attorneys for Defendants

15